349 So.2d 1353 (1977)
Glen E. MILLER, Plaintiff-Appellee,
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Ace Lee Honley, Ivan Debban and General Insurance Company of America, Defendants-Appellants.
No. 13302.
Court of Appeal of Louisiana, Second Circuit.
August 29, 1977.
Rehearing Denied September 26, 1977.[*]
*1355 Boudreaux & Clement by Larry P. Boudreaux, Thibodaux, and Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for defendants-appellants, Ace Lee Honley, Ivan Debban and General Ins. Co. of America.
Pugh & Nelson by Sydney B. Nelson, Shreveport, and C. Sherburne Sentell, Jr., Minden, for plaintiff-appellee, Glen E. Miller.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for intervenor-appellee, Employers Mut. Liability Ins. Co. of Wisconsin.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied September 26, 1977.[*]
HALL, Judge.
This is an "executive officer" or "co-employee" negligence action arising out of events that occurred prior to the enactment of Act 147 of 1976, amending LSA-R.S. 23:1032, which now precludes such actions. Plaintiff, a millwright employed by Woodard-Walker-Willamette, Inc., a plywood manufacturer, sustained serious and disabling injuries to his back in two separate on-the-job incidents in February and September, 1974. Alleging the accidents and resulting injuries were caused by the negligence of his foreman and the plant manager, plaintiff sued those persons and the company's liability insurer, whose policy provided coverage for damages caused by the negligence of not only executive officers but also other supervisory personnel including foremen. The employer's workmen's compensation insurer intervened seeking recovery of compensation benefits paid and to be paid to the plaintiff. The defendants denied negligence and alternatively pled plaintiff's independent and contributory negligence in bar of recovery. After trial before a jury, a general verdict was returned in favor of plaintiff and against defendants in the amount of $190,000, of which $11,310.09 was due the intervenors. From a judgment rendered accordingly, defendants appealed.
Giving weight to the jury verdict (in spite of serious error in the admission of improper evidence prejudicial to the defendants) and viewing the facts in a light most favorable to the plaintiff, this court nevertheless concludes the established facts do not, as a matter of law, give rise to liability on the part of defendants. As to the first accident, the facts do not establish negligence on the part of the defendants, and as to the second accident, the facts establish plaintiff's contributory negligence, barring recovery. We, therefore, reverse the judgment of the district court and render judgment in favor of defendants rejecting plaintiff's demands for damages.

I.
Plaintiff, Glen E. Miller, was a thirtyone-year-old millwright who had been working at the plant for approximately four years at the time of the first incident in February, 1974. He had a tenth-grade education, several years experience in the Navy as a boiler man, and additional experience in construction and maintenance before going to work for the plywood plant.
The primary duties of a millwright are the repair and maintenance of the plant and all its machinery. Each millwright is *1356 issued a set of comealongs to assist in the performance of his varied tasks. In addition, each millwright has available to him the use of a forklift, a boom, blocks and chocks, other equipment, and can call on the assistance of other millwrights and laborers. In performing their duties, the millwrights, whose pay scale is higher than common laborers, are to a significant extent expected to exercise their own judgment as to the method and manner of accomplishing a particular task.
In 1972, plaintiff had back surgery involving the removal of two herniated discs at the L-4 and L-5 levels. He recovered satisfactorily and in 1974 was performing without restriction or limitation a millwright's regular duties, which involved a combination of light, moderate and heavy manual labor.
On February 25, 1974, Miller and another millwright, Lonnie Chandler, were assigned by Ace Lee Honley, the millwright foreman, to perform a routine maintenance check on the dryers. In the course of their work on the dryers, they discovered that one of the dryer doors was warped. They reported the condition of the door to Honley and his supervisor, Earl Wilson, and were instructed to change out the warped door with another dryer door. No specific instructions on the manner of changing the doors were given.
The dryer doors measure approximately six feet by five feet, weigh approximately 300 pounds and are located several inches above the cement floor. Miller and Chandler decided to change the doors manually, without the use of a forklift or other mechanical equipment which was available. They placed two by fours and four by fours under the door so that when the pins were knocked out of the hinges the door would not fall to the floor. When the warped door was removed, the men found the door heavier than anticipated.
After discovering that the doors were heavier than expected, Miller and Chandler went to the foreman and requested more help. Two more men were sent to help complete the task. The four men manually moved the new door into place. During this stage of the operation, Miller stumbled over a narrow concrete ledge. It was not until later in the day, however, when working underneath a deck of tubes in the dryer and twisting to push a piece of metal into place, that Miller noticed a sharp pain in his hip, similar to the pain he had experienced in connection with his previous back injury. The pain persisted and after several days Miller went to Dr. W. W. Fox, an orthopedic specialist who had done the previous back surgery. Dr. Fox diagnosed Miller's problem as a reinjury or continuation of his previous disc condition, and attributed the onset of pain to the heavy work involving the dryer door, which was the only accident Miller mentioned to the doctor. Although the evidence is not entirely clear, we accept as a fact that Miller sustained his back injury at some point while changing out the doors.
After this injury, Miller underwent conservative treatment followed in March by back surgery which consisted of cleaning out scar tissue in the disc spaces at the L-4 and L-5 levels and a fusion of the vertebrae in that area.
On June 17, the doctor released plaintiff to return to light duty work with no lifting, although plaintiff was still experiencing considerable pain and disability. The treating physician's report was sent to the Ruston office of the company and to the company's workmen's compensation insurer. The report stated Miller was released to return to light duty work with no lifting at all. On his return to work, plaintiff discussed his condition with Ivan Debban, the plant manager, and was told that the foreman would be informed that he was on light duty and was not to be assigned any lifting. Initially, plaintiff's duties consisted of sweeping, cleaning the shop, and straightening blueprints and records. Later, he was assigned to assist the parts man in going to get parts from various locations.
*1357 During the time he was on light duty, Miller continued to experience pain and tenderness in his back. The pains were described as sharp sometimes, burning at other times. He continued to see his physician at regular intervals for follow-up observation.
The second incident occurred on September 30, 1974, while Miller was still on light duty assignment. Miller was instructed by Honley to change the grid in the coupling on the glue mixer machine, a task which did not require any lifting. Miller determined that the coupling was torn up and needed changing and so informed Honley. At this point there is a contradiction in the testimony as to exactly what directions Honley gave Miller. Honley's version is that he told Miller to get A. C. Sandifer, a millwright-electrician, to unhook the motor and take it down. Miller's version is that Honley told him to get Sandifer to unhook the wires from the motor and did not say anything about Sandifer's taking the motor down. We accept Miller's version that Honley either did not direct that Sandifer take the motor down or at least did not make his instructions clear. Miller got Sandifer, who unhooked the wires from the motor and walked away. Miller, aware that he was not supposed to do any lifting, nevertheless proceeded to manually remove the motor weighing 60 to 70 pounds. There was mechanical equipment available to assist in the moving of the motor and there were alternative methods of removing the motor which did not involve manual lifting.
While waiting on a part, Miller took a break and ran into Debban, the plant manager. When asked how he was doing, Miller told Debban that his back was hurting, and when Debban asked him if had been doing any lifting Miller replied yes and that Ace had been working on the glue mixer machine. Miller testified that Debban then turned and walked away toward his office without further comment or instruction. Debban testified that he told Miller not to do anything that would hurt his back and that he would talk to the foreman. Again, we accept Miller's version of the conversation.
Miller returned to the glue mixer machine, completed the repair of the coupling, and then manually lifted the motor back into position. He experienced no particular incident of pain at that time, but that night and the next day his back pain increased and he went back to Dr. Fox. Since that time, until the trial in November, 1976, plaintiff has not returned to his employment with the plywood manufacturer nor has he been able to obtain any other employment. The doctor described the lifting plaintiff did in connection with the glue mixer machine as being the final blow leading to his complete disability and failure to recover from the back surgery. Dr. Fox was of the opinion that plaintiff was totally and permanently disabled from performing the regular duties of a millwright and from performing any work that would involve lifting, bending, prolonged standing or sitting. The doctor was of the opinion that plaintiff could be retrained for light duty work. Plaintiff has not undertaken any training for other work, and as explained by him, has changed roles with his wife who now works while plaintiff does the household chores. Plaintiff testified that he hunts extensively during deer season, killing several bucks the previous season, and fishes two or three times a week when the fish are biting.

II.
At this point, it is appropriate to discuss the weight being given to the jury verdict by this court, in view of what we find to be error on the part of the trial court in allowing evidence of the occurrence of other back injuries at the plant.
Over the strenuous objection of counsel for defendants, plaintiff's counsel was allowed to cross-examine Debban, the plant manager, concerning his knowledge of numerous other back injuries listed on records *1358 of the company. For example, counsel would ask Debban if he knew about a particular back injury to a particular employee on a particular date. The purpose of the line of questioning was stated to be to establish a lack of proper safety procedures in dealing with back injury problems at the plant.
Such evidence was patently inadmissible, having no relevancy to the issues involved in this case. There was no evidence to establish how, when or where the other back injuries occurred or that they were in any way related to the incidents involved in this case arising out of work on the dryer doors and the glue mixer machine. Evidence of prior injuries may under limited circumstances be admissible to show notice of an existing particular hazardous condition, where the prior injuries are closely related in circumstance to the injury or hazard at issue. In the case before this court, the evidence of prior injuries was totally irrelevant. The admission of the evidence could have had a serious prejudicial effect on the jury, suggesting (but certainly not proving) generally unsafe conditions at the plant and a callous disregard by management. It was not shown that the other injuries arose from accidents in any manner similar to those involved in this case, nor that the number of back injuries was unusual at a plant of this size and nature.
The error in admitting the evidence was of such a serious prejudicial nature that it would justify this court in giving little or no weight to the jury's verdict. See Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Even though prejudicial evidence was improperly admitted, the duty of the appellate court is not to remand but is to review the facts and render judgment on the merits. La.Const., art. V, § 5; Gonzales v. Xerox Corporation, supra.
Although this court, under the circumstances, is not required to give the usual weight to the jury verdict, we have, in fact, given substantial weight to the jury's findings for the plaintiff in this case. It seems probable that the jury basically believed plaintiff's version where there was a conflict between plaintiff's testimony and that of the individual defendants. This leads us to accept the plaintiff's version in our findings of fact as set forth above.

III.
In Canter v. Koehring Company, 283 So.2d 716 (La.1973), the Louisiana Supreme Court set forth criteria for imposing individual liability upon an officer, agent or employee of an employer to a third person, including a co-employee, damaged by reason of the individual's breach of an employment-imposed duty:
"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
"2. This duty is delegated by the principal or employer to the defendant.
"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must *1359 have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."
The Canter v. Koehring Company opinion also makes it clear that whether there is actionable negligence is to be determined under general tort principles:
"The failure to act as required by the employment duty may deprive the third person of a protection owed him by the principal or employer, and such risk of harm because of the breach may have been reasonably foreseeable. Thus, the breach of the duty imposed by the employment or agency relationship may, under general tort principles, be actionable negligence because of the creation or maintenance thereby of an undue risk of harm to others."
Applicable general tort principles, developed within the scope of the fault concept established by LSA-C.C. Art. 2315, include the following (summarized in Smolinski v. Taulli, 276 So.2d 286 (La.1973)):
(1) Actionable negligence results from the creation or maintenance of an unreasonable risk of harm to others.
(2) While statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined.
(3) Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances. The party relying on contributory negligence has the burden of proving it.
(4) Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution and foresight does not constitute negligence or contributory negligence.
A statutory guideline in determining the duty owed by an employer to an employee is found in LSA-R.S. 23:13 which provides:
"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations."

IV.
In order to establish actionable negligence on the part of Honley or Debban, it was necessary for plaintiff to establish a duty owed to him by the employer, delegation of that duty to Debban or Honley in such a manner as to create a duty owed by Honley or Debban personally to plaintiff, a personal breach of that duty by Debban or Honley, and that the breach of the duty caused plaintiff's injury.
As provided in LSA-R.S. 23:13, the employer owed plaintiff a duty to make his employment reasonably safe and to use safety devices, safeguards, methods and processes reasonably adequate to render the employment and place of employment safe in accordance with accepted and approved *1360 practice in the same or similar industries, considering the normal hazard of such employment. Overall responsibility for safety at the plant was delegated by the employer to the plant manager, Debban. The foreman, Honley, had employment-imposed delegated responsibility for the safety of employees under his supervision in connection with day-to-day work assignments.
Plaintiff charges Debban with negligence in failing to provide an adequate safety program, including training and meetings, and in failing to provide adequate tools and equipment to the employees in carrying out their work assignments. As to the safety program and training, there is no evidence supporting a cause-in-fact relationship between the lack of a well-organized safety program and the two incidents which resulted in injury to the plaintiff. The tasks assigned to plaintiff which gave rise to his injuries were relatively simple and well within his training, experience and capability. There is nothing in the evidence to indicate that a more sophisticated safety program at the plant would have prevented the incidents giving rise to this lawsuit. As to the alleged failure to provide adequate tools and equipment, the evidence is to the contrary. The testimony shows that the millwrights were provided with tools and equipment including mechanical equipment to assist in lifting and moving heavy objects. There is no basis for finding actionable negligence on the part of Debban in connection with the overall safety or equipment at the plant.
Turning to the first incident involving the dryer doors, the evidence shows that Debban had no personal knowledge of the work assignment, the conditions plaintiff was working under or the manner in which plaintiff was performing the job. There was no duty owed by Debban personally to plaintiff in connection with the first incident, nor could there have been a personal breach of duty by Debban. Therefore, there was no actionable negligence on his part in connection with the first incident.
Plaintiff charges Honley with negligence in connection with the first incident in failing to give specific instructions as to how the job was to be done, in failing to adequately supervise the job, and in failing to provide adequate assistance and equipment when asked to do so. The facts do not justify a finding that Honley breached any duty of care owed to plaintiff. As previously mentioned, the task was basically simple and within the millwright's experience and capability. Two able-bodied, experienced millwrights were assigned to change out the doors and were expected to use their judgment in selecting an appropriate and safe manner in which to carry out the task. The two men had mechanical equipment available upon request to assist in the job but elected to proceed without the equipment. Even so, the method selected by them of handling the heavy door was not itself inherently unsafe nor did it result in actual accident or untoward happening. Plaintiff and the other millwright found the door heavier than expected and asked for assistance which was provided in the form of two additional men. The four men completed the job. Sometime during the course of the job, and the evidence definitely does not establish at what point, plaintiff reinjured or aggravated his back at the location of his previous back surgery. This was a normal hazard of the heavy work plaintiff was hired to do. The evidence does not establish that the assignment was dangerous or that the manner in which it was actually carried out was dangerous. We find no duty on the part of Honley to have given specific instructions to experienced millwrights in connection with the assignment, nor to have exercised closer supervision, nor to have provided assistance beyond the two additional men who were furnished. Likewise, we find no breach by the foreman of the general duty he owed to the plaintiff to provide reasonably safe conditions in which to perform his employment. There was no actionable negligence on the part of Honley in connection with the dryer door accident.
*1361 In connection with the second incident involving the glue mixer machine, the question of actionable negligence of Debban and/or Honley is close. Debban, as plant manager, had direct knowledge that plaintiff was to do no lifting and had the duty of informing plaintiff's foreman to that effect. Debban carried out this responsibility according to the evidence. Debban had no knowledge of the initial assignment of Miller to work on the glue mixer machine but became aware of it when he ran into plaintiff during a break. At that time plaintiff told Debban his back was hurting and that Honley had him working on the glue mixer machine. The question is whether Debban's failure to take affirmative steps at this point constitutes actionable negligence. There is also a question of whether there was actionable negligence on the part of Honley in connection with the glue mixer incident. Plaintiff contends that when Honley learned from plaintiff that the coupling would have to be changed, which would ordinarily involve moving the motor, his failure to be more specific in his instructions as to assistance or to take closer charge of the situation, in view of his knowledge that plaintiff was to do no lifting, was a breach of his duty owed to the disabled employee. On the other hand, it is argued by defendants that there was no negligence because plaintiff's work assignment was made subject to previous clearly-stated instructions that plaintiff was to do no lifting. We need not, however, pass specifically on this issue because of our conclusion that plaintiff himself was negligent, barring his recovery.
Plaintiff was completely aware of his disability and of the fact that he was to do no lifting at all. The content of the doctor's report was known to him and the doctor had advised him personally not to do any lifting. The plant manager had told plaintiff on several occasions that he was to do no lifting. For a period of several weeks he had regularly been assigned light duties that involved no lifting. Plaintiff could not be supervised at every moment. The plaintiff's responsibility to avoid lifting was at least equal to that of his supervisory co-employees.
Even after the millwright-electrician unhooked the motor and left the job location, plaintiff had a number of alternatives available to him in carrying out the assignment of changing the coupling. He could have made a more specific request for help from Honley. He could have used mechanical equipment which was available to him. There is some evidence that the coupling could have been changed without actually completely removing the motor. The danger of lifting the motor was as obvious, if not more so, to plaintiff as it was to the foreman. Plaintiff's action in lifting the motor fell below the standard to which he should have conformed for his own protection. His action was not that of a reasonable man under like circumstances.
A strong argument is made by plaintiff that he should not be held contributorily negligent for following orders and doing what he was told to do by his foreman. Plaintiff cites several cases in which contributory negligence defenses were rejected because the employee was faced with choosing between undertaking a dangerous assignment, or telling his supervisor how to run the job, or quitting.
In Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4th Cir. 1970), it was held:
"The test for negligence is reasonableness. While it may be true that the reasonable man would wish to avoid the known risk here, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to loss of his job, his means of support for self and family."
Similarly, in Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App. 3d Cir. 1976), reversed as to quantum, 341 So.2d 332 (La. 1977), the court stated:
"The law is well settled that a workman is not to be held contributorily negligent because he does work assigned to *1362 him under dangerous conditions for which his employer is responsible and at which assignment he must work or suffer dismissal."
See also O'Keefe v. Warner, 288 So.2d 911 (La.App. 1st Cir. 1974).
On the other hand, there are cases in which an employee's contributory negligence has been held to bar recovery against a supervisory co-employee or executive officer. See Laborde v. Martin, 316 So.2d 437 (La.App. 3d Cir. 1975) and Richardson v. Heyd, 323 So.2d 507 (La.App. 4th Cir. 1974). In these cases, the employee was found to have had sufficient knowledgeable control over his situation at the time of the injury to make an evaluation of his conduct, a pertinent factor in considering negligence which contributed to cause the harm. Other cases have held that an employee who exposes himself to a known danger assumes the risk of such exposure and is guilty of contributory negligence if he suffers injury as a result thereof. Swilly v. American Fire & Casualty Company, 148 So.2d 157 (La.App. 1st Cir. 1962); Spears v. American Fidelity & Casualty Company, 123 So.2d 513 (La.App.Orl.1960); Pfister v. Phoenix of Hartford Insurance Company, 290 So.2d 362 (La.App. 4th Cir. 1962).
Emerging as criteria for determining an employee's contributory negligence are: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.
Applying these criteria to this case, the evidence establishes that plaintiff had as great or greater knowledge of the risk of lifting the motor as the foreman. In fact, the foreman had no specific knowledge that plaintiff intended to manually remove and replace the motor. Although the foreman had control over the particular work assignment, the plaintiff millwright had control of the specific manner in which the assignment was carried out. The plaintiff had instructions to change the coupling but there was no direct instruction for him to manually move the motor. The procedure followed by him was voluntary on his part. There is nothing in the record to indicate that plaintiff was motivated, or had any reason to be motivated, by a fear of losing his job if he called for additional assistance or used alternative methods of moving the motor. There was no emergency pressure to get the job done. Plaintiff had been told repeatedly not to do any lifting. He had, in fact, for several weeks, been given only light work to do. His election to manually move the motor was voluntary on his part. As previously explained, there were safe alternatives available to plaintiff. The risk or danger was in no way hidden, but was perfectly obvious to plaintiff. At the point in time when the millwright-electrician walked away and plaintiff was faced with completing the job, he and he alone had the ability to eliminate or avoid the danger.
For these reasons, plaintiff's conduct was not that of a reasonable man and cannot be excused on the basis of following orders or the pressure of job security. Knowing that he should not lift and was not expected to do so, knowing the risk involved, and knowing available alternatives, plaintiff did not conform to the standard required for his own self-protection, was contributorily negligent, and as a matter of law is barred from recovery.

V.
At this point, it is appropriate to discuss the weight given to testimony by plaintiff's witness, C. D. Attaway, upon which plaintiff heavily relies. Attaway, a safety consultant and safety professional, was qualified as an expert safety engineer with many years experience and excellent credentials in the field of industrial safety.
*1363 The expert was asked hypothetical questions based on the facts involved in the two incidents and, in general, testified that in his opinion what was done by Honley and Debban was unsafe and that each assignment could have been handled in a safer manner through better safety programs and training, more specific instructions, closer supervision, and the like. An example of the line of questions and answers is the following:
"Q Assume in connection with the dryer door in question that an effort is made by two men to remove a dryer door and that after one door has been removed one or both of these men advised the foreman, the supervisor that they need more help or words to that effect. Further assume that the supervisor sends two more men to help and that his involvement in the job terminates at that point. Is there any unsafe procedure involved in that?
"A In my opinion there is.
"Q What is that, sir?
"A The very fact that the supervisor was notified that they were having a problem should have indicated that they had some condition down there that was going to cause an exposure or some kind of an incident, therefore merely sending manpower muscle to the job does not constitute a solution to the problem. That supervisor should make a personal visit to the area, observe what the conditions are and what problems have arisen and from there making a decision as to how the job should proceed and be carried on further without exposure to damage or injury of personnel."
We recognize the expert's considerable knowledge and experience in the field of safety and that his opinion as to safe and unsafe procedures has some weight or value. In determining the issue of legal duty and breach thereof, the weight and value of the expert's testimony is, however, reduced because the opinions expressed by him are not tied in to or related to any standards established by the industry, by safety organizations, by government safety agencies or otherwise, and because the ultimate determination is one of law. Almost any task in a manufacturing plant has some risks or hazards attached to it and in this sense is unsafe. Risks and hazards can always be reduced by extraordinary supervision and safeguards. Hindsight in viewing a particular situation which produced an injury can always suggest a safer way of handling the situation. The record contains no evidence of what safety standards are usually or customarily followed relating to supervision of millwrights by foremen in manufacturing plants. LSA-R.S. 23:13 itself refers to accepted and approved practice in the same or similar industry considering the normal hazards of the employment. The weight to be given to the testimony of the safety expert is reduced by his failure to relate his opinions to accepted and approved practices. Failure to use extraordinary care and to take every precaution against injury is not actionable negligence. His opinions, to a large extent, also fail to take into account the basic nature of a millwright's work as disclosed by the evidence. The millwright's experience and expertise are greater than a common laborer, as reflected by his position and pay scale. His work is maintenance and repair, consisting of both routine and emergency jobs, requiring independent judgment and discretion. The necessity for detailed instructions and close, direct supervision is reduced with the increase in the level of experience, independence and discretion demanded by the job and exhibited by the worker. These factors were not covered in the expert's evaluations, which were not tied in to legal standards of negligence. We find his testimony helpful and of some value, but unpersuasive in the ultimate legal determination of actionable negligence or absence thereof.

VI.
For the reasons expressed in this opinion, the judgment of the district court is reversed *1364 and set aside. Judgment is rendered in favor of defendants, Ace Lee Honley, Ivan Debban, and General Insurance Company of America, rejecting the demands of plaintiff, Glen E. Miller, and intervenor, Employers Mutual Liability Insurance Company of Wisconsin, and dismissing plaintiff's and intervenor's actions, at their costs, including the costs of appeal.
Reversed and rendered.
NOTES
[*] MARVIN, J., took no part in decision.