COVINGTON, Judge.
This suit involves a tort claim for damages against Rodney Robillard, John L. Morrison, Jr., John L. Morrison and Vaneta Morrison, who are allegedly executive officers of Pointe Coupee Constructors, Inc., the plaintiff’s employer. Plaintiff, Joseph Jerry Batiste, alleges that defendants are personally liable to him for damages he sustained when he injured his back on February 19, 1976, while doing carpentry work on a job for his employer at the Ethyl Corporation in Baton Rouge, Louisiana.[1]
This case was consolidated with plaintiff’s suit for workmen’s compensation against his employer, Pointe Coupee Constructors, Inc. We are rendering a separate opinion in that companion case. See 401 So.2d 1263 (La.App. 1 Cir. 1981), No. 14,274 on the docket of this Court.
In the tort suit, the trial court found that none of the defendants were negligent and, therefore, rendered judgment in favor of defendants dismissing the plaintiff’s suit. Plaintiff has devolutively appealed this judgment.
On February 19, 1976, while employed by Pointe Coupee Constructors, Inc., Batiste and a co-employee were carrying a heavy manhole form from the place where it had been built to a pickup truck to transport it to the place where it was to be erected, when the co-employee slipped and dropped his end of the form, causing a wrenching back injury to the plaintiff. The form they were carrying was the last one needed for this particular job (a catch basin); they had already transported three forms that day and four on the day before. (There were eight forms to a catch basin; and, 23 manhole forms had already been erected.) Rodney Robillard was the craft foreman and immediate supervisor of Batiste; John L. Morrison, Jr. was a director of the company and the general superintendent on the Ethyl construction job. John and Vaneta Morrison did not actively participate in the operation of the construction company, and were dismissed by the trial court from the suit.[2] Batiste was an experienced carpenter, having worked as such for about 20 years; he was also experienced in building, moving and erecting manhole forms of the *1269 kind he was moving at the time he got hurt, and was the carpenter foreman when the accident happened. Although the accident happened about 10:00 or 11:00 o’clock in the morning, Batiste continued to work the rest of the day; and worked for five weeks after the injury.
The basis for the executive officer tort suit was that the general superintendent (Morrison) and the supervisor (Robillard) failed to carry out their respective duties to provide Batiste a safe place to work.
In Canter v. Koehring Company, 283 So.2d 716 (La.1973), the Louisiana Supreme Court set forth the criteria for imposing executive officer liability, as follows:
“1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
“2. This duty is delegated by the principal or employer to the defendant.
“3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
“4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff’s damages. If the defendant’s general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance of mal-performance and has nevertheless failed to cure the risk of harm.”
The Canter v. Koehring Company opinion also makes it clear that whether there is actionable negligence is to be determined under general tort principles:
“The failure to act as required by the employment duty may deprive the third person of a protection owed him by the principal or employer, and such risk of harm because of the breach may have been reasonably foreseeable. Thus, the breach of the duty imposed by the employment or agency relationship may, under general tort principles, be actionable negligence because of the creation or maintenance thereby of an undue risk of harm to others.”
Applicable general tort principles, developed within the scope of the fault concept established by LSA-C.C. Art. 2315, include the following:
(1) Actionable negligence results from the creation or maintenance of an unreasonable risk of harm to others.
(2) Statutory violations may be guidelines for the court in determining standards of negligence by which civil liability is determined, although they are not in and of themselves definitive of civil liability.
(3) Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances.
*1270 (4) Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution and foresight does not constitute negligence or contributory negligence.
See Smolinski v. Taulli, 276 So.2d 286 (La.1973); Galliano v. Lirette, 339 So.2d 378 (La.App. 1 Cir. 1976), writ denied, 341 So.2d 416 (La.1977).
A statutory guideline in determining the duty owed by an employer to an employee is found in LSA-R.S. 23:13 which provides:
“Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations.”
The record reflects that Pointe Coupee Constructors was a closely-held family corporation with defendant Morrison as a part owner and acting in the capacity of secretary-treasurer of the corporation and general superintendent of the particular job on which the accident to the plaintiff occurred. The chain of command was that Morrison would set out the day’s work for Robillard, the crafts foreman or overall supervisor, and Robillard would in turn tell the foreman of each craft, such as Batiste (the carpenter foreman), what work was to be done that particular day, leaving it up to the respective foreman to see that the particular work was done by his workmen. On the day in question the plaintiff was working as carpenter foreman, having recently replaced a man who had quit.
Batiste testified that he had been working as a carpenter for more than 20 years and had been a member of the carpenter’s union for many years. He was asked to be carpenter foreman on this job because he could read blueprints and knew how to build and erect manhole forms; the reason he gave was, “I had been on many other jobs building manhole forms.” In general, his duties were to perform some work as carpenter, to see that the carpentry work by other carpenters and laborers was done, and to tell the other carpenters and laborers what work was to be done and how it was to be done after getting the daily work-orders from Robillard.
The record shows that Batiste got his work-orders on February 19,1976, from Ro-billard, before the accident; he did not receive any direct instructions from Morrison as to how to erect or move the forms; he was not ordered by Robillard to take one employee, and for the two of them to carry or move the form. Defendants Morrison and Robillard were not actually present at the time of the accident. Robillard testified that it was the duty of the carpenter foreman, Batiste, to actually supervise the carpentry work and to utilize the carpenters and laborers and equipment available to him for the particular tasks that had to be performed.
The testimony at the trial indicates that the manhole form being carried by Batiste and his co-employee was about seven feet by seven feet and weighed between 200-300 pounds, although the size and weight was not definitely established. The evidence also shows that there were several workers available to help carry the form: a carpenter and five laborers. Therefore, Batiste, as carpenter foreman, had the laborers available to assist him. Twenty-three similar forms had already been set by hand on this job; and Batiste and his helper had already moved three such forms to the truck for transporting to the catch basin that day without difficulty.
Considering the fact that some twenty-three similar forms had been moved without incident, and that the job of moving these forms had been assigned to a *1271 carpenter-carpenter foreman with some 20 years’ experience in his field and with actual experience in building, erecting and moving such forms, we find no negligence or breach of duty on the part of Morrison and Robillard in leaving a job within the plaintiff’s job description and experience up to him to properly perform the necessary work. Placing an experienced workman, such as the plaintiff, in charge of building, transporting and erecting construction forms does not constitute negligence or a breach of the employer’s duty to provide the plaintiff with a safe place to work.
Appellant’s counsel has cited numerous cases in support of his position. They are inapposite. Among them are: O’Keefe v. Warner, 288 So.2d 911 (La.App. 1 Cir. 1973), writ denied, 293 So.2d 170 (La.1974); Walker v. Graham, 343 So.2d 1171 (La.App. 3 Cir. 1977), writ denied, 346 So.2d 213 (La.1977). They are distinguishable from the instant case. In O’Keefe, the employee was injured when a crane he was operating tipped over because of a defect which caused the load to get out of balance. There was no proof of assumption of risk or contributory negligence on the part of the plaintiff in O’Keefe. The appellant in the instant case is dissimilar to the inexperienced youth in the Walker case.
Further, this case is easily distinguishable from Talluto v. Patchen, 370 So.2d 618 (La. App. 4 Cir. 1979), where the immediate superior directly ordered the employee to move a heavy object in an obviously unsafe manner.
In Laborde v. Martin, 316 So.2d 437 (La. App. 3 Cir. 1975), writ denied, 320 So.2d 207 (La.1975), and Richardson v. Heyd, 323 So.2d 507 (La.App. 4 Cir. 1975), the courts held the employee had sufficient knowledgeable control over his situation at the time of the injury to make a reasonable evaluation of his conduct, a pertinent factor in considering negligence which contributed to cause the harm.
We thus agree with the trial judge’s conclusions regarding the defendants, that they were not negligent under the circumstances. Batiste was not ordered by Morrison or Robillard to move the form in the manner in which he chose to move it; as carpenter foreman, he personally selected this manner. Ample labor-help was available, yet the plaintiff chose to move the form in that particular way.
Moreover, in the event that it can be said that either Morrison or Robillard was negligent, then the record clearly establishes Batiste’s contributory negligence.
The situation in the instant case is similar to that of the plaintiff in Miller v. Employers Mutual Liability Insurance Company of Wisconsin, 349 So.2d 1353 (La.App. 2 Cir. 1977). In Miller, the injured employee was experienced in his craft of millwright and his work was such that he was expected to exercise his own judgment as to the manner in which his assigned work was to be done. Miller, too, had the authority to call on laborers, as well as other members of his own craft, to assist him in his work. After reviewing the employee’s situation vis a vis the supervisory personnel, the Court stated as follows concerning the contributory negligence of an employee:
“Emerging as criteria for determining an employee’s contributory negligence are: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee’s situation; (3) the degree to which the employee’s conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.” (349 So.2d at 1362)
The Court then went on to conclude that the criteria had been met and to find that the plaintiff was contributorily negligent.
The Miller criteria have been met in the instant case: Batiste had more knowledge of the situation and any risk or danger than either Morrison or Robillard; he had control, as carpenter foreman in charge of this particular job, over the manner in which the work was performed; his conduct was voluntary; there were alternatives available to him as foreman; and any danger or risk could have been eliminated by him.
*1272 The plaintiff in the Miller case had claimed that his actions were not voluntary because of fear of losing his job. However, in Miller, as in the instant case, there was nothing in the record to indicate that the employee had any reason to be in a fear of losing his job if he called for additional assistance, or used alternative methods of accomplishing the work. Our careful examination of the record in the case at bar does not disclose manifest error in the conclusions of the trial court.
Accordingly, the trial court was correct in dismissing Batiste’s tort claim.
For the foregoing reasons, we affirm the judgment appealed at the appellant’s costs.
AFFIRMED.

. This is an “executive officer” negligence action arising out of an accident that happened prior to the enactment of Act 147 of 1976, amending LSA-R.S. 23:1032, which now precludes such actions.

. The plaintiff has not appealed this dismissal from the suit.