517 So.2d 258 (1987)
Felix PERRO
v.
STATE of Louisiana, et al.
No. 86 CA 1213.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Writ Denied January 8, 1988.
*259 Alfred F. Boustany, II, Lafayette, and Preston M. Summers, Abbeville, for plaintiff-appellant Felix Perro.
Houston T. Penn, Baton Rouge, for defendants-appellees State of Louisiana, et al.
Before WATKINS, CARTER and CHIASSON,[*] JJ.
*260 CARTER, Judge.
This is an appeal from the trial court's denial of damages for injuries.

FACTS
On January 29, 1980, Felix Perro (Perro), an inmate incarcerated in Jackson Barracks in New Orleans, Louisiana, was working in the maintenance shop as a mechanic. Perro was assigned the task of repairing a plastic toilet seat, a task he had previously performed. In order to repair the seat, Perro had to cut off a portion of the plastic from the back of the seat and replace the plastic with wood.
In performing his task, Perro used a skillsaw to cut the hard plastic material, although there were other available tools with which he had successfully cut previously damaged seats. The 7½inch circular skillsaw was mounted to the bottom of a table and was available for the mechanics' use. The saw's blade protruded from the top of the table approximately 1½ to 2 inches. This particular saw did not have a guard covering the blade.
While using this saw to cut the seat, Perro used both hands to guide the material through the saw as the blade began to cut, positioning the blade between his hands. During the cutting process, the plastic often became lodged in the saw, and Perro, at several intervals, placed his fingers only 2½ to 4 inches away from the blade to dislodge the material. Thereafter, as Perro pushed the material through the saw, Perro accidently severed two of his fingers on his left hand and severely damaged his left thumb.
Perro filed suit against the State of Louisiana, through its Department of Corrections and the Louisiana Board of Corrections (Department), seeking damages for injuries he sustained. Perro contended that the Department was negligent in failing to provide him with a safe place to work, proper supervision, and adequate tools to perform his duties. He alleged strict liability in that the "homemade" table saw had been supplied to him by the Department and was inherently dangerous. The Department denied any negligence and contended that the accident was caused solely by the negligence of Perro by voluntarily choosing this table saw to perform the duty assigned to him. The Department further alleged that Perro's use of this saw demonstrated a failure to display and exercise the judgment and discretion required and expected of a prudent and careful person.
Subsequent to a hearing before a Commissioner of the Nineteenth Judicial District, the trial court rendered judgment in favor of the Department, dismissing Perro's suit. After reviewing the Commissioner's reports, the trial court found that Perro's conduct constituted contributory negligence.[1] The Court also found the Department liable under LSA-C.C. art. 2317, but found Perro's actions constituted victim fault sufficient to preclude recovery.
Perro appeals, assigning the following errors:
1. The trial court erred in finding Perro to be at fault in causing his injuries.
2. The trial court erred in concluding that the alleged fault of Perro is a defense to the strict liability imposed on the State under LSA-C.C. art. 2317.

CONTRIBUTORY NEGLIGENCE
The Department of Corrections is under a duty to provide inmates with a reasonably safe place to work and with equipment that is reasonably safe for performing required tasks. Bridgewater v. State, Department of Corrections, 434 So. 2d 383 (La.1983); Reed v. State, Department of Corrections, 351 So.2d 788 (La. *261 App. 1st Cir.1977). However, the Department is not the insurer of the safety of inmates in prisons. Its duty is to exercise reasonable care to protect an inmate against unreasonable risk of foreseeable harm. It is not required to anticipate and warn against every possible danger to which an inmate may be exposed. See Lanieux v. State, Louisiana State Penitentiary and Department of Corrections, 328 So.2d 765 (La.App. 1st Cir.1976), writ denied 334 So.2d 427 (La.1976).
We agree with the lower court's finding that the Department was negligent. Although the Department is not required to anticipate and warn of every possible danger, it is clearly foreseeable that a skillsaw, unprotected by any guard could cause injury to an inmate. This particular saw was not designed to be operated without a guard, nor was it designed to be mounted to a table to be used as a table saw. This accident was reasonably foreseeable as Perro, as well as the other inmates, frequently used the machine and could have been injured due to the absence of the safety guard. The risk involved of this type of accident was within the scope of duty owed by the Department to Perro. There existed an ease of association between the risk presented by Perro's actions (using the saw in this manner) and the overall circumstances which resulted in Perro's injuries (injuries as a result of an unguarded saw). See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972). If the guard had not been removed or had it been replaced, the accidental injury could not have occurred.
We further concur in the trial court's finding that Perro was contributorily negligent and that such contributory negligence was a proximate cause of his injuries. Contributory negligence is defined as plaintiff's conduct which falls below the standard of care which he should perform for his own protection. The standard is determined by reasonableness of behavior under the circumstances. Contributory negligence is a matter of fact to be determined in light of the circumstances of each case. Soileau v. South Central Bell Telephone Company, 406 So.2d 182 (La.1981). Contributory negligence is never presumed; such negligence on the part of the plaintiff must be proved as any other fact by a preponderance of the evidence. Tirante v. Gulf States Utilities Company, 412 So.2d 128 (La.App. 1st Cir. 1982), writ denied 414 So.2d 389 (La.1982). See also McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La. 1975). The party relying upon the contributory negligence defense has the burden of proving it. Smolinski v. Taulli, 276 So.2d 286 (La.1973). See also Hall v. Hartford Accident and Indemnity Company, 278 So.2d 795 (La.App. 4th Cir.1973), writ refused 281 So.2d 753 (La.1973).
In the case of an inmate plaintiff, the State has the burden of proving that the prisoner failed to exercise care commensurate with the hazard he faced. Lee v. State, Department of Institutions, 294 So.2d 553 (La.App. 1st Cir.1974).
In Bridgewater v. State, supra, the Louisiana Supreme Court applied the standard for determining the contributory negligence of employees, enunciated in Miller v. Employer's Mutual Liability Insurance Company of Wisconsin, 349 So.2d 1353 (La.App. 2nd Cir.1977), writ denied 352 So.2d 235 (La.1977), to inmates as follows:
(1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger. [434 So.2d at 385]
In applying this standard, the court in Bridgewater found that the inmate, who was not skilled in the use of the metal cutting machine, was not contributory negligent because he did not voluntarily use the machine. He was ordered to use the machine. The court therefore found he was not contributorily negligent in performing the job as he had been instructed.
While Louisiana courts have acknowledged that an employee is not entirely free to avoid known risks without perhaps *262 subjecting himself to loss of his job, an inmate, in particular, is not in a position to refuse to perform a job known to be dangerous. See Stilley v. State, 376 So.2d 1007 (La.App. 1st Cir.1979), writ refused 378 So.2d 1389 (La.1980). An inmate has far less freedom of choice; he is subject to disciplinary measures if he refuses to do what he is told.
In the instant case, Perro testified he had worked in the maintenance shop with this particular saw for approximately eight months before the accident. He was familiar with the skillsaw and knew the saw did not have a guard on it. Perro also testified that the seat was made of plastic which this saw could not easily cut. While attempting to cut the plastic, he stated that the saw would become temporarily inoperable and that he would have to maneuver the plastic from beneath the saw.
Henry Harms, maintenance superintendent charged with the responsibility of supervising Perro in the maintenance shop, was on duty on January 29, 1980, but was not physically present in the shop at the time of the accident. According to Harms, Perro had worked in the machine shop approximately eight months prior to this accident. He further testified Perro was a good worker, and, if Perro had any problems with the task he was assigned, Perro could discuss these problems with Harms as they had a good working relationship. At the time of the accident Harms testified that the men in the maintenance shop were repairing about 3-4 toilet seats daily.
Harms repaired the first toilet seat by placing it in a vice and using a hacksaw to cut the plastic because the plastic was too hard to cut with a skillsaw. According to Harms, if someone attempted to use the skillsaw to cut the plastic, the skillsaw would catch. The skillsaw was used primarily to cut plywood. In cutting the plywood, it was not necessary for the inmates to have their hands close to the exposed blade. A "push stick" was used to push the wood through the saw. Although Harms had observed Perro operating the skillsaw prior to the accident, he had never observed Perro with his hands close to the exposed blade. Harms testified that he did not instruct Perro to use the table saw to cut the plastic. He testified that, had he observed Perro using the skillsaw to cut the toilet seat, he would not have permitted it because there were hand tools for Perro to use to safely perform this task. A fine tooth handsaw or hacksaw was available and could have been used in conjunction with a vice to repair the seat, as had been done previously.
Based upon the evidence presented, the trial court correctly found that Perro was well aware of the danger involved in using the skillsaw to cut the plastic. It is clear that Perro was not ordered to use the skillsaw, but voluntarily chose to use it. This saw was not the only tool available to Perro; he had several alternatives available. The danger of the skillsaw without a guard was apparent to Perro, and he could have eliminated any risk of this type of injury by using hand tools and a vice. He voluntarily, and on his own initiative, chose to use the dangerous saw for a task for which it was not designed. By choosing to use the saw, he fell below the standard to which a reasonable man should conform for his own protection. Therefore, the trial court found that Perro was contributorily negligent, thus barring his recovery. We cannot say that the trial judge's factual findings are clearly wrong.

STRICT LIABILITY
The theory of strict liability is enunciated in LSA-C.C. art. 2317:
We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
The Supreme Court, in Loescher v. Parr, 324 So.2d 441 (La.1975), discussed the concept of strict liability and the legal basis for such liability as follows:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care or *263 guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. [324 So.2d at 446]
In Jones v. City of Baton RougeParish of East Baton Rouge, 388 So.2d 737 (La.1980), the Supreme Court discussed strict liability on the part of public entities and summarized the plaintiff's burden of proof in strict liability actions as follows:
Because the responsibility for preventing the unreasonable risk of injury to others is unconditional, the injured party seeking damages under article 2317 need not prove that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect. (Citations omitted) [388 So.2d at 739]
In the instant case, the trial court held, as did the Commissioner, that:
(1) The Department of Corrections is liable under Article 2317 as the Department of Corrections had in its care and custody the table saw which was involved in this accident;
(2) That the table saw was of a dangerous nature as it was homemade and did not provide a guard which would prevent such injuries as the one that occurred in the instant case; and
(3) That this defect created an unreasonable risk of injury to Mr. Perro and that his injury was caused by this defect.
We conclude the trial court was not clearly erroneous in finding the Department liable under LSA-C.C. art. 2317 for the damage caused by the saw, absent victim fault.
Once the plaintiff proves custody, defect and causation, the custodian or guardian can escape liability only by showing the harm was caused by the fault of the victim, by the fault of a third person or by an irresistible force. Loescher, supra and its progeny; Robertson v. Parish of East Baton Rouge, 415 So.2d 365 (La.App. 1st Cir.1982). "Fault of the victim ... means the conduct of the victim was a substantial factor in causing the injury complained of." Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470 (La.App. 5th Cir.1982); Summer v. Foremost Insurance Company, 417 So. 2d 1327 (La.App. 3rd Cir.1982). Victim fault must rise to the level of causing the accident before it will bar recovery. Rozell v. Louisiana Animal Breeders Co-Operative, Inc., 496 So.2d 275 (La.1986).
In the instant case, the trial court found Perro's choice of the defective skillsaw to cut the plastic was a substantial factor in causing his injuries and thus constituted victim fault sufficient to bar recovery in a strict liability action. Perro knew there was no guard on the saw. Perro knew the plastic was difficult to cut with this saw and encountered numerous problems in using this saw. There were numerous other tools available which Perro could have used to perform the same task. Further, Perro knew of the risk and danger of placing his fingers so close to an exposed skillsaw blade. Therefore, we cannot conclude that the trial court was clearly wrong in finding that Perro's conduct was a substantial factor in causing Perro's injuries and thus constituted victim fault, barring his recovery.
This court must give great weight to the factual conclusions reached by the trial court, Canter v. Koehring Co., 283 So.2d 716 (La.1973), and may not substitute its own evaluations and inferences, for the reasonable evaluations and inferences of the trier of fact, unless those conclusions are clearly erroneous. Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825 (La.1987); Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir. 1980); Esta v. Dover Corporation, 385 So. 2d 439 (La.App. 1st Cir.1980), writ denied 392 So.2d 690 (La.1980).
*264 After carefully reviewing the record, we cannot say that the trial court's factual findings are clearly wrong.

CONCLUSION
For the above reasons, the judgment of the trial court finding Perro was contributorily negligent and that his actions constituted victim fault, thus barring his recovery under both negligence and strict liability is affirmed. Costs of this appeal are assessed against Perro.
AFFIRMED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.
[1] This is a pre-comparative negligence case. LSA-C.C. art. 2323 was amended by Acts 1979, No. 431, § 1 effective August 1, 1980. Perro was injured on January 29, 1980; the effective law at the time of the accident provided that any negligence on the part of plaintiff would completely bar his recovery.

Section 4 of Acts 1979, No. 431 (§ 1 of which amended this article) provided that: "The provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective."