WILLIAM A. CULPEPPER, Judge Pro Tern.
This is a personal injury case. Plaintiff, August Lartigue, Jr., injured his finger on a log splitting machine. He was an inmate at the Calcasieu Parish Rehabilitation Center and was performing assigned duties at the time of the incident. Plaintiff named as defendants the Sheriff of Calcasieu Parish, Wayne F. McElveen, “Several Unknown Deputies And/Or Employees Of The Calcasieu Parish Sheriff Department,” and the Calcasieu Parish Police Jury.
The trial court rendered judgment for plaintiff against Wayne McElveen and the Calcasieu Parish Sheriff’s Department for $4000, and ordered the amount to be reduced by 80% for plaintiff’s comparative fault. Plaintiff appeals the trial court’s finding of comparative fault. Defendants did not appeal. We affirm.
FACTS
At the time of the accident, February 8, 1989, plaintiff was incarcerated at the Cal-casieu Parish Rehabilitation Center (Rehab Center). He was assigned as a helper to Ray Savage, another inmate at the time, who was operating a log splitting machine. Plaintiff’s job was to place the logs on the machine.
The log splitter was gasoline powered and hydraulically operated. It had a long *208 plate, on which the logs were placed, and a hydraulic push that steadily and slowly slid the logs along the plate to a piece of triangular shaped metal, which split the logs. One person operated the throttle and another placed the logs on the plate.
At the time of the accident, there was not a supervisor from the Calcasieu Parish Sheriffs Department present. Plaintiff testified “[w]hat they would do, they would drop us off and another inmate would assign you to what he wanted you to do.” He stated that although he had previously seen and worked near such a machine, he did not know how to operate it and that no one had ever explained to him how it worked. The foreman only “told [him] to just put the log on there.”
Plaintiff testified it was a very cold day, which caused the hydraulic ram to “freeze up” and “hesitate.” When the splitter hit a knot, the log would jump straight up. This had happened several times earlier that day. On the occasion in question, plaintiff had put a large log on the slide and was holding it down as it split. The splitter hit a knot and the log jumped up. The hydraulic “kicked in” and the blade caught his finger. He jerked his hand back and saw blood coming out of his glove. Part of the tip of the index finger of his right hand was severed, and the distal end of the distal phalanx was fractured.
OPINION
The trial court assigned 80% fault to plaintiff and 20% fault to defendants. The court found that defendants failed to properly instruct or supervise plaintiff, but that “the common sense approach would have indicated that [plaintiff] shouldn’t have done it in the fashion that he did it.”
Neither plaintiff nor defendants appealed the trial court’s determination on the issue of quantum, and defendants did not appeal the court’s finding that they were negligent. Accordingly, we will not address those issues. Plaintiff contends only that the trial court erred in finding him comparatively negligent.
In oral reasons for judgment, the trial court stated:
“The evidence also indicates that this particular plaintiff was not supervised nor was he given any safety precautions or instructions on how to work.
“The evidence does further indicate that the plaintiff was negligent himself in how this log was placed upon the splitter, basically by the testimony of the last witness — or the next to last witness called, Mr. Savage, who indicated that he had his hands on both ends of the log.”
The trial court also found that the Sheriff’s Department had a policy whereby inmates who wished to be stationed at the Rehab Center were required to work. Plaintiff testified that “we didn’t have no choice on what we wanted to do. You either do it or go back to the Parish [Prison].”
Additionally, testimony in the record indicates that, at some point, plaintiff had to place his hands on the logs once they were on the slide to keep the logs balanced, to guide them, or to hold them down. Levan-der John Hersey, III, another former inmate of the Rehab Center, who was on the crew with plaintiff at the time of the incident, testified “in order for the wood not to fall you got to hold it.” However, he stated that he would not reach out and grab a log if it were splitting improperly because “[c]ommon sense, it’s not safe.” He could not say if he would hold his hands on the log while the ram was pushing the section of wood against the splitter.
Plaintiff testified “I had to put my hand on the top [of the log] to press it down or it would shoot straight up in the air ... ■ it was common sense, you had to put your hand on there to hold it down for the log to go through and split. If you didn’t, it would shoot straight up.”
Savage testified “[y]ou set [the logs] up there, and once you set them up there, generally put your hands on there to keep it balanced until the hydraulics engage ... Most of the time you had to put [your hands] on the ends to put [the logs] up there ... that’s the only way to do it.” (Emphasis added.) Savage indicated that the person should then remove his hands.
*209 Savage indicated that plaintiff had his hands on the end of the log. As we appreciate his testimony, the hydraulic was engaged at that point. From plaintiffs testimony, it appears that the injury occurred after the hydraulic had engaged and when the log hit a knot, while plaintiffs hand was still on the log. Plaintiff stated that his finger then got hooked on the ragged edge of the log, and the hydraulic “kicked in.”
A prison inmate can hardly refuse to perform a job known to be dangerous. He has little freedom of choice, since he is subject to disciplinary measures if he refuses to do what he is told. Bridgewater v. State Department of Corrections, 434 So.2d 383 (La.1983). In Bridgewater, the Louisiana Supreme Court applied to inmates the standard for determining the contributory negligence of employees, enunciated in Miller v. Employers Mutual Liability Ins. Co. of Wisconsin, 349 So.2d 1353 (La.App. 2d Cir.), writ denied, 352 So.2d 235 (La.1977), as follows: (1) relative knowledge of the danger by the supervising employer and the injured employee; (2) relative control over the employee’s situation; (3) the degree to which the employee’s conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger. See also, Perro v. State, 517 So.2d 258 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988).
In Gauthier v. Goux, 579 So.2d 1233 (La.App. 3d Cir.), writ denied, 585 So.2d 572 (La.1991), this court applied the Miller criteria in a comparative fault case. Accordingly, we use the Miller criteria in the case at hand.
Although plaintiff may have had to perform the job of placing the log on the plate, and he may have had to keep his hands on the log until the ram engaged, the trial court could have reasonably concluded that plaintiff was negligent in leaving his hands on the log after the hydraulic ram engaged the log.
The trial court assessed 80% negligence to plaintiff. The manifest error-clearly wrong rule applies to findings concerning respective degrees of fault. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
The trial court could have reasonably concluded due to the nature of the log splitter and plaintiff’s previous experiences earlier that day when the splitter hit knots in the logs, that plaintiff was aware of the danger of leaving his hands on the log once the hydraulic engaged. The trial court also could have reasonably concluded, as stated earlier, that the plaintiff was not required to keep his hands on the log once the hydraulic engaged, even though plaintiff believed he did not have an alternative method of performing his job.
DISPOSITION
For the foregoing reasons, we affirm. We assess costs of this appeal to plaintiff-appellant.
AFFIRMED.