hKLEES, Judge.
Plaintiff Jerry Robinett and defendant Sil-vereagle Transport, Inc. have filed cross appeals from the trial court’s judgments in a bifurcated trial arising out of a collision between plaintiffs vehicle and defendant’s eighteen wheel tractor/trailer.
The accident occurred on the afternoon of June 9, 1989 when the tractor/trailer, being driven by Silvereagle’s employee Larry Tobi-as, apparently turned right from the left lane of Chef Menteur Highway and in doing so, was hit by plaintiffs car, which had been proceeding in the same direction in the right lane a short distance behind the tractor/trailer. Tobias was turning into the driveway of Meyers Warehouse, where he was to deliver the empty trailer. Robinett’s car went underneath the trailer and was dragged for an undetermined distance. Robinett injured three fingers on his hand, which required surgery, and suffered a permanent partial deformity of his little finger.
On April 30, 1990, Robinett filed suit in civil district court against Tobias, Silvereagle, and Silvereagle’s insurer, National American Insurance Company. The trial was bifurcated, with the damages portion taking place on November 17-18, 1992 and the liability portion being tried on June 4, 1993. The insurer was dismissed on a directed verdict. The trial judge, after making extensive findings of fact, held the remaining defendants to be 40% at fault and the plaintiff to be 60% at fault, and further found total damages in the amount of $27,500. By judgment dated July 2,1993, the trial court awarded plaintiff a net recovery of $11,000 plus interest. Following a separate hearing to tax costs of litigation, the trial judge assessed costs in the amount of $10,070.71 to the defendants.
Plaintiff has appealed, claiming that the trial court erred in assigning any degree of fault to him, that the dismissal of the insurance company was improper, and that the amount of damages awarded is insufficient. Defendant Silvereagle has also appealed, contending that the amount of damages awarded is excessive and that the amount of costs assessed to defendants is excessive and unreasonable. We will address the issues of liability, damages and costs separately.

liability

Plaintiff contends that the trial judge committed manifest error by assigning to him sixty percent of the fault which caused the accident. Plaintiff testified that he was driving eastward in the right lane of Chef Ment-eur Highway at a speed of fifty to fifty-five miles per hour, about one-hundred to two hundred feet behind defendant’s eighteen wheeler, which was travelling eastward in the left lane at a speed of about ten miles per hour. Plaintiff stated that the tractor/trailer suddenly made a right turn into a private driveway, leaving the trailer blocking plaintiffs lane. Plaintiff stated that he slammed • on his brakes in an attempt to avoid hitting the trailer, but was unsuccessful.
Witnesses called by plaintiff included two experts, civil engineer Glenn Snyder and accident reconstructionist Leonard Laketek, both of whom opined that the tractor/trailer had to have turned from the left lane in order to have ended up in the position depicted on photographs of the accident scene. Officer Michael Jones, who investigated the accident, also testified. He stated that there were skid marks beginning on the paved highway and leading onto the shelled shoulder of the road; that there was no one who came forward as an eyewitness to the accident, and that he issued no citations because the two drivers gave conflicting accounts of how the accident occurred. Finally, plaintiff introduced 'the deposition of Danny Riddle. At the time of the accident, Mr. Riddle was an employee of Paxton-Woods, which is located next to (with one vacant lot in between) Meyers Warehouse. Mr. Riddle testified that on the afternoon of the accident, he was driving westward on Chef Menteur returning to his job after picking up lunch. After he passed Meyers Warehouse, he turned left intending to enter the parking lot of Paxton-Woods. He testified that he stopped in the median of the highway to let the eastward bound traffic pass. While he was stopped, a *320 large white rig passed him in the left eastward bound lane, followed closely by a car in the right lane. He then proceeded into the parking lot and as he was 'getting out of his truck, he noticed that an accident had just occurred in the Meyers Warehouse parking lot next door. He assumed from their appearance that the vehicles involved in the accident were the same white rig and old car that had just passed him while he was waiting to turn. Mr. Riddle then went inside Paxton-Woods and asked someone to call the police, which was udone. Mr. Riddle also identified the vehicles in a photograph of the accident scene as appearing to be the same ones he saw.
Defendant’s witnesses included Larry To-bias, the driver of the tra'ctor/trailer, who stated he was driving eastward in the right-hand lane at a speed of seven to eight miles per hour when he made his turn. He stated that he looked in his left rear-view mirror, but did not recall having looked in his right rear-view mirror. He said he had his four-way flashers on, but did not put on his right turn signal. At various times in his deposition and at trial, Tobias stated that: (1) he did not see any vehicles behind him; and (2) he saw a car about a block and a half behind him before he began his turn, but did not know whether it was plaintiffs car. Expert witnesses for the defendants included Cliff Mugnier, a photogrammetrist, who called into question the technique used by plaintiffs expert Snyder, and Oscar Griffith, an accident reconstructionist, who opined that plaintiffs vehicle was at least four hundred feet behind the tractor/trailer, and that the tractor/trailer could have made the turn from the right lane. Finally, defendants called Clovi-na Meyers and Patrick Meyers, who claimed to have been eyewitnesses to the accident. Clovina Meyers said she saw the accident occur while standing at a window of her office in Meyers Warehouse, waiting for the tractor/trailer to arrive. She said that the tractor/trailer was in the right lane and plaintiffs car came up on the shells. Patrick Meyers, who was standing in Meyers parking lot also waiting for the tractor/trailer to arrive, confirmed that the big rig was in the right lane and the car attempted to pass it on the shells. Both Clovina and Patrick Meyers stated that had they told their stories to a policeman on the day of the accident; however, Officer Jones, the policeman who made out the accident report, had no record or recollection of any witnesses to the accident.
Based on the totality of the evidence, the trial judge determined, among other facts, that: (1) Defendant’s tractor/trailer was trav-elling at ten miles per hour in the lefthand lane when it began its right turn; (2) Plaintiffs vehicle was travelling at about fifty-five miles per hour in the right lane between three hundred and four hundred feet behind the tractor trailer; (3) Plaintiffs reaction time, once he observed the rig blocking his path, was at least one second; and (4) Plaintiff braked hard, began to skid to the right, and skidded onto the shelled shoulder of the road, hitting the right center of the trailer at a speed of about thirty miles per hour.
| ¿After making these findings of fact, the trial judge assigned the liability for the accident at 40% to the defendants and 60% to the plaintiff. The trial judge stated in his written Reasons for Judgment that this assessment of fault was primarily due to:
(a) Robinett’s statement that he observed the very slow moving truck in the left lane. He had a duty to observe it carefully and proceed to pass it with caution.
(b) Robinett’s failure to observe the turn of Tobias’s vehicle until the tractor totally blocked the right lane of Chef Menteur. He had a duty to observe the developing situation once the tractor encroached on the right lane.
(c) Tobias’s attempt to turn when he observed Robinett’s car not more than 1-1/2 blocks to the rear of his point of view in the tractor and approaching the rear of his trailer at full speed preponderates to Tobi-as’s assumption that Robinett would see the truck’s turn and slow accordingly. The turn created under the circumstances an unreasonable risk of harm to the following Robinett vehicle.
(d) The negligence of the drivers each was a significant cause in fact of the accident.
*321 After reviewing the entire record, we find this judgment to be manifestly erroneous because there is no credible evidence that the plaintiff was negligent in any respect. We agree with the trial judge’s conclusion that the traetor/trailer turned from the left lane rather than from the right lane. The testimony of Mr. Riddle that he observed the two vehicles in this position just before the accident is very convincing on this point, as is the expert opinion of Mr. Laketek. Mr. To-bias’ testimony that he turned from the right lane, besides being self-serving, is suspect because of all the inconsistencies in his testimony generally. We agree with the trial judge that the testimony of Clovina and Patrick Meyers is not credible in view of the fact that their respective positions were not conducive to the observation of which lane the tractor/trailer was driving in, and the fact that they were not known to Officer Jones or mentioned on the police report. Moreover, the position of the skid marks did not coincide with their testimony that plaintiffs ear was attempting to pass the tractor/trailer on the sheEs.
Having concluded that the preponderance of the evidence points to Tobias’s having turned from the left lane, we find no evidence of fault on the part of plaintiff. Plaintiff admitted that he observed the slow-moving rig in the left lane, but stated he had no reason to believe it was about to make a right turn. The trial judge’s conclusion that Tobias had turned his light blinker on is manifestly erroneous in view of Tobias’s testimony that he hadlshis four-way flashers on, but did not put his right turn signal on. Nevertheless, the trial judge found, as do we, that there was no evidence that any turn signal or flasher actually appeared on the trailer. There is also no evidence that plaintiff was either exceeding the speed limit, following too closely, or drinking alcohol. We also find no support for the trial judge’s conclusion that the plaintiffs reaction time was slower than normal, especially in light of the conflicting testimony as to the initial distance between the two vehicles.
There is, however, ample evidence of Tobi-as’s negligence in driving the tractor/trailer. He violated numerous traffic ordinances by driving' slowly in the left lane, failing to signal a right turn, executing a right turn from the left lane, and failing to make sure it was safe to turn. In Davis v. Bowman, 346 So.2d 225 (La.App. 4th Cir.1977), we held that a motorist who turned right from the left lane and was hit by the vehicle travelling behind him in the right lane was solely responsible for the accident. In that case, we noted that although the law does impose upon a following motorist a duty to exercise great care, an exception to this general rule is recognized where the driver of the lead vehicle neghgently creates a hazard which the following driver cannot reasonably avoid. Id. at 227 (Citation omitted). We find that this exception applies to the instant case, because plaintiff had no reason to expect that defendant would attempt to turn right from the left lane. Once defendant created the hazard, plaintiff could not avoid hitting him. Under these circumstances, it was manifest error for the trial court to have assigned 60% of the fault involved to the plaintiff based solely on his “failure to observe” the turning rig until it was too late. As we find no evidence that the plaintiff was inattentive or neghgent in any other way, we have resolved to reverse the trial court’s judgment concerning liability and to assess 100% of the fault in causing plaintiffs injuries to the defendants.

Damages

Defendant Silverea gle contends that the amount of damages awarded is excessive. In reviewing quantum, we are required to look to the facts and circumstances of the individual case, and not to disturb the award unless we find an abuse of discretion; in such a case, we may then lower (or raise) the award only to the highest (or lowest) point which is reasonably within the court’s discretion. Perez v. State, Through DOTD, 578 So.2d 1199, 1206 (La.App. 4th Cir.1991), ivrit denied. In the instant case, we find no abuse of discretion in the trial court’s award of $27,500.00.
Defendant argues that the court awarded at least $17,500 in general damages, when, in fact, the award of $27,500 was made in globo, with no distinction made between general and special damages. Evidence of special damages introduced at trial included over *322 $9,000 in lost wages, nearly $7,000 in medical bills ($436.00 of which was paid by plaintiff out-of-pocket) and more than one hundred dollars in property damages. Contrary to defendant’s assertion, we do not believe it was error for the trial court to allow the introduction of evidence as to the total medical bills, even though only the out-of-pocket amount was initially prayed for in plaintiffs petition. Plaintiff is legally entitled to claim the medical expenses in total. Nevertheless, even considering only the out-of-pocket amount, we find no abuse of discretion in the quantum awarded.
Plaintiff testified to the tremendous pain and suffering he experienced after the accident, which he described as feeling “like putting [his] hand in a meatgrinder.” He also described the tremendous pain he felt following the surgery, in which three fingers of his hand were stitched up from end to end, and how he developed an infection in one finger which prevented him from working for several months. Plaintiff was left with a permanent impairment of the little finger known as mallet finger deformity, which is a result of the extensor tendon having been completely severed. Photographs of plaintiffs hand show keloiding and a somewhat abnormal appearance of all three fingers.
Under the circumstances, we do not find the trial judge’s award to be either an abuse of discretion or grossly disproportionate to past awards for similar injuries. See, e.g.: Lescale v. Louisiana Coca-Cola Bottling Co., 422 So.2d 241 (La.App. 4th Cir.1982); Cazenave v. Pierce, 568 So.2d 1360 (La.App. 4th Cir.1990), writ denied. Therefore, we will not disturb the quantum award.

Costs

Defendants contend that the trial judge’s assessment to them of $10,070.71 in costs of litigation is improper. We disagree. The trial judge gave a detailed list of the costs breakdown in his Reasons for Judgment. The majority of the costs, nearly $7,000, is attributed to plaintiffs accident reconstructionist, Leonard Laketek, who performed his tests |7in Florida. The record shows that the Florida-based expert was chosen only after defendants, over plaintiffs objection, refused to produce an identical tractor/trailer anywhere except in Florida. There are no inappropriate costs included in the amount awarded for Mr. Laketek. The record also justifies the $955.82 allowed for Mr. Thorpe, one of plaintiffs damage experts who was brought to Louisiana to be deposed by defendants. The fixing of expert fees is within the discretion of the trial judge, and the amount will not be set aside on appeal absent an abuse of discretion. Liquid Carbonic Corp. v. BASF Wyandotte Corp., 468 So.2d 1225, 1232-33 (La.App. 4th Cir.1985) (Citations omitted). We find no abuse of discretion in the instant case. Moreover, the taxing of all costs -to defendants is entirely proper in light of our opinion holding defendants solely liable.

Dismissal of Insurer

Silvereagle’s insurer, National American Insurance Company, was made an original defendant in this case and answered the petition by pleading the terms of its insurance policy as an affirmative defense. At trial, the trial judge refused to admit the insurance policy into evidence because counsel for defendants objected to its not having been on plaintiffs exhibit list; however, the trial judge allowed the plaintiff to proffer the policy.
Plaintiff now contends that it was error for the trial court to exclude the policy, and as a result, to dismiss the insurer. Plaintiff argues that the insurer should have been cast in judgment along with Silvereagle, according to the terms of the policy. We agree that it was error for the trial judge to exclude the policy, which is clearly relied upon in the pleadings, solely because it was not made a part of the pretrial exhibit list. Defendant Silvereagle argues only that the policy was properly excluded; it makes no argument as to whether or not the policy applies. From the face of the policy, we find that it applies to this situation. Therefore, we have resolved to reverse the directed verdict in favor of the insurer, and to cast the insurer in judgment along with Silvereagle.

CONCLUSION

Accordingly, for the reasons stated, we reverse the trial court’s judgment as to liabil *323 ity, reverse the judgment dismissing the insurer, and affirm the trial court’s judgment in all other respects. We hereby order that there be judgment in favor of plaintiff, Jerry L. | gRobinett, and against defendants, Silver-eagle Transport, Inc., National American Insurance Company, and Larry Tobias, jointly, severally and in solido, in the amount of $27,500.00, with interest thereon at the legal rate from April 30, 1990 until paid, and further in solido for costs in the amount of $10,070.71, with interest on the sum of $9,048.07 at the legal rate from September 8, 1993 until paid.

REVERSED IN PART AND AFFIRMED IN PART.