J2FITZSIMMONS, Judge.
In these consolidated suits for contribution and indemnity, the trial court found that (1) Louisiana State University (LSU) did not exercise sufficient control over Andrew Erie Schroeder (Eric) to be hable for his negligent actions and (2) LSU did not borrow the Schroeder vehicle. Plaintiffs, Rolf Schroeder, Eric, and the intervenor, Continental Casualty Company (CNA), appealed. We affirm.
FACTS AND PROCEDURAL BACKGROUND
In its reasons for judgment, the trial court outlined the background of the case and made the following findings of fact:
On Saturday, October 29, 1983, Andrew [Eric] Schroeder with his father’s permission, drove his father’s automobile to the University High School for the annual ‘Sadie Hawkins Day events sponsored by the senior class. On the way to the school, he stopped to give a ride to a fellow classmate, Bradley Aucoin. Prior to going to the school, however, they stopped at [a] convenience [store] and purchased a six pack of beer. During the course of the afternoon, [Eric] consumed five of the beers.
Sadie Hawkins Day is an annual event sponsored by the senior class to raise funds for the reception following graduation. There is a day portion which involves games and various contests similar to those found at a fair. The evening activity is a dance for the older high school age students. Both the fair and the dance take place on the campus and are chaperoned by senior class faculty sponsors and any other teachers who are willing to participate. There are four senior class sponsors who are appointed by the principal, Dr. Fox, one of whom was Ms. Ater.
The boys arrived at the school around 12:30. Later that afternoon, sometime be *614 fore 4:00 p.m., Ms. Ater ... asked Aucoin if he knew [who] was assigned to bring the ice for the sodas which were going to be served at the dance that night. Aucoin said that he didn’t know but volunteered to go get it. Ms. Ater gave Aucoin the money for the two, fifty pound bags of ice, and gave him directions to the Brown Eagle ice house approximately two miles away. Ms. Ater did not know that Aucoin did not have a car. However, she was aware that some mode of transportation would be required to reach the ice house. Aucoin asked [Erie] to drive him to get the ice. Even though Ms. Ater did not know [Eric] would be the ultimate driver of the vehicle to obtain the ice, she had no objection to him going on the mission. After obtaining the ice from the ice house, [Eric] and Aucoin stopped to buy another six pack of beer. On the return to the school, h[Eric] lost control of his vehicle and collided with another car causing severe injuries to the operator of the other vehicle, Jeanne Elise Lee. Lee, through her parents, sued [Eric] Schroeder; his father, Rolf; his insurer, USAA; and her uninsured/underin-sured motorists carriers, Safeco [Insurance Company] and Continental Casualty Company (CNA). Judgement was rendered in favor of Lee in the amount [of] $1,626,-600.00 against all named defendants. USAA, as liability carrier of [the] Schroeder [family], paid its entire policy limits of $100,000.00. Lee’s UM carriers, CNA and Safeco [Insurance Company] paid the balance of the judgment with Safeco being cast for $500,000.00 and CNA for the balance of $900,600. CNA and Safeco cross-claimed against Rolf R. Schroeder for amounts paid under their policies. These judgments were affirmed on appeal with minor reductions in quantum, (citation omitted)
[Rolf] Schroeder then filed suit[s] against LSU and its insurers, Continental Insurance Company and Fidelity and Casualty of New York. CNA and Safeco intervened in the matter[, and joined as plaintiffs in the second suit,] asserting that if LSU’s policy afforded coverage then Lee was not uninsured or underinsured and LSU’s insurers were liable to reimburse them for sums paid out under their policies with the Lees. The matter was previously before the appellate courts on summary judgment primarily on the issue of the meaning of the term ... “borrow” in the policy issued by Continental to LSU. The trial court found that the term was ambiguous, and construed the term against the insurance company finding that it contemplated any use of any vehicle for the benefit of the named insured LSU. The Court of Appeal affirmed, and the Louisiana Supreme Court reversed. The matter was remanded for trial on [the] issues.
After hearing the evidence at trial, the trial court came to the following conclusions:
(1) Plaintiffs were not entitled to recover under Civil Code articles 2318 or 2320. Civil Code article 2320, not the parent’s recourse provision of article 2318, defines the responsibility of a teacher to a student in the teacher’s care. Article 2320 limits the extent of the teacher’s liability for the student’s negligent actions to events where the teacher could have prevented the damage, but did not. Ms. Ater was unaware of Eric’s drinking and probably unaware of the use of the Schroeder vehicle. Because Ms. Ater could not have prevented the off campus negligent actions of Eric that caused the accident, Ms. Ater, and her employer LSU, were not [¿responsible for the damage to Ms. Lee.
(2) Under the analysis used in Whetstone v. Dixon, 616 So.2d 764 (La.App. 1st Cir.), writ denied, 623 So.2d 1333 (La.1993), LSU had no liability as principal for the negligent acts of Erie. A volunteer can be an agent. However, before a principal can be responsible for the tortious acts of his agent, a master-servant type relationship must exist and the principal must control the agent in a manner characteristic of the master-servant relationship. Such a relationship did not exist. Erie and Bradley Aucoin did not hold a position of significance in the LSU structure, the Sadie Hawkins Day events were extra-curricular, the mission to get ice for the dance at school was not within the scope of general school duties, and Ms. Ater did not exercise the type of control discussed in Whet *615 stone over the boys or the details of the trip.
The lack of control over the boys and their movements is particularly decisive. The seniors were free to come and go as they saw fit during the events. If Eric and Bradley had refused to get the ice or failed to return, the school had no recourse against the boys for their failure to get ice on a Saturday for a senior class sponsored dance that night. In the absence of the necessary control over the boys’ actions, LSU was not vicariously liable for the negligent acts of Eric.
(3) LSU did not borrow the Schroeder vehicle because it did not acquire the control over the car required by the Louisiana Supreme Court in Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 842 (La.1991). In Schroeder, the supreme court decided that “ ‘automobile lending requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle, and not merely that the use of the vehicle by another person redound by chance to the benefit of a purported borrower.’ [Schroeder, 591 So.2d at 347.]”
In addition to the facts relied on by the supreme court, 15Mr. Schroeder testified at the trial on remand that he gave his son unlimited use of the family ear, but did not specifically discuss the use of the car to run errands for the school. Notwithstanding Mr. Schroeder’s testimony, plaintiffs related no facts at the trial that changed the material facts relied on by the supreme court as a basis for its decision. By giving the name of the nearest ice house and directions to the ice house, Ms. Ater did not exercise or acquire dominion and control over the Schroeder vehicle.
For these reasons, the trial court found in favor of LSU and its insurers and rendered judgment dismissing the claims of the Schroeders and CNA, Safeco Insurance Company (Safeco) settled with the defendants before rendition of the judgment and had its claims dismissed. The Schroeders and CNA appealed.
CONTROL
The UM carriers, Safeco and CNA, and the Schroeders, filed suits against LSU and its insurers and asked the court to hold LSU liable or answerable under its insurance policies for the damages to Ms. Lee and her family. If LSU was held liable or answerable under its policies, contribution and indemnity for the sums paid to the Lees by the UM carriers could be obtained from LSU’s insurers. The appellants asserted several bases for coverage under LSU’s automobile and liability insurance policies. The appellants made arguments at trial, and in briefs, for extending liability and triggering coverage based on (1) provisions of the insurance policies, (2) principles of agency, and (3) the provision of Civil Code article 2318 that allows parents held liable for the negligent actions of their children recourse against those in whose care the children were placed.
Whether the insurance policy affording coverage was an automobile, a general liability, or umbrella policy, no recovery can be made without a finding that LSU, by its own actions toward Eric or of borrowing the Schroeder ear, became answerable for the damages caused by Eric. Regardless of the basis for the argument to extend liability or afford coverage under LSU’s policies, the issue 16at the heart of this case is the level of control exercised by LSU over Eric or the Schroeder vehicle through the act of borrowing. We agree with the analysis and findings of the trial court that LSU did not exercise the level of control necessary to establish a reasonable basis for holding LSU liable.
Sadie Hawkins Day is a senior class sponsored fund raiser for a reception held after graduation. The seniors decided to hold the event. They planned and organized it. The seniors decided among themselves who would be responsible for particular duties, such as bringing ice. The senior class sponsors helped the seniors organize the event. The sponsors chaperoned and supervised the students while they were on campus. However, the seniors were responsible for seeing that the necessary tasks were accomplished. They were free to come and go at will during the day. The money Ms. Ater gave Bradley to buy the ice came from the senior cash box. *616 This cash box was used to make change for tickets purchased for the various fair activities. Any profit from the fair events and the dance went to pay for the senior reception.
Bradley did not know who had been appointed to get the ice for the dance, but volunteered to get the ice. Ms. Ater accepted the offer. She gave Bradley the money from the senior cash box, and directions to the nearest known ice house. She did not set the agenda or restrict any other activities during the trip. She did not give a return time or set a time limit for the trip.
With a field trip or a trip to a school sponsored activity off campus, such as an athletic event, the school’s handbook extended the jurisdiction of the school to cover the students while on those trips. The trip to get the ice was not a field trip or a trip to a school sponsored activity off campus.
In addition to the general underlying arguments based on LSU’s control of Eric and the vehicle, appellants made specific arguments for reversal. We find no basis for a reversal of the judgment of the trial court based on these arguments.
CIVIL CODE ARTICLE 2318
The Schroeders admit in brief that they are not seeking to 17hold Ms. Ater accountable under Civil Code article 2320 for Eric’s negligent actions while driving his father’s car off campus. Instead, they argue that Civil Code article 2318 gives a parent held liable for a child’s negligence, Rolf Schroeder, recourse against the person in whose care the child was placed at the time the damage occurred, Ms. Ater.
The trial court found that Civil Code article 2320 limits any recourse a parent may have against a teacher and Ms. Ater was not liable under article 2320. We agree. Ms. Ater owed no duty to Eric to supervise his actions off campus, and the risk involved did not arise from Ms. Ater’s duty to supervise these students on campus.
Civil Code article 2318 is not applicable. Even if it were, in the absence of a teacher-student relationship, the record contains no evidence that Eric was specifically placed in the care of Ms. Ater or LSU for that day or the time of the accident. Ms. Ater was at the school as a senior class sponsor, and teacher, to help with the day’s activities and supervise the students on campus. We find no merit in the Schroeders’ reliance on article 2318.
AGENCY
A principal is not responsible for the tortious acts of its agent unless the principal exercises control, over the agent and the physical details of the agent’s activities, characteristic of a master-servant relationship. Whetstone, 616 So.2d at 770-71; Lasseigne v. American Legion, Post 38, 543 So.2d 1111, 1114 (La.App. 1st Cir.1989). Accepting only for the sake of argument that the actions of Ms. Ater established any type of agency relationship with Bradley, and through him Eric, we agree with the trial court’s finding of no liability on the part of LSU as the principal.
LSU, through the actions of Ms. Ater, did not exercise sufficient control over the boys or the trip to hold LSU liable for Eric’s tortious conduct off campus. The actions of Ms. Ater: (a) asking who was responsible to get the ice for the dance, (b) accepting Bradley’s offer to get the ice, and (c) giving Bradley money and directions, did not rise to the required level of control over an agent, or over the details of the trip, to hold LSU | gvicariously liable for Eric’s negligent driving.
BORROWED CAR
“Under its generally prevailing meaning, borrow connotes the acquisition of temporary possession, dominion, or control of a thing, or the right to direct the use of a thing, not merely the receipt of some benefit from its use by another person.” Schroeder v. Board of Supervisors, 591 So.2d at 343. Under the facts offered on the motions for summary judgment, the supreme court found that LSU did not borrow the vehicle because it did not possess, dominate, control or acquire the right to direct the use of the vehicle. Thus, the vehicle was not covered under LSU’s insurance provision for borrowed vehicles. Schroeder v. Board of Supervisors, 591 So.2d at 343-44.
*617 Justice Cole, in his concurrence, raised the question of whether Erie had permission to lend the car. “If Eric did not have that breadth of control over the car, the issue of what constitutes ‘borrowing’ need not even be reached.” Schroeder v. Board of Supervisors, 591 So.2d at 347 (Cole, J., concurring).
Appellants rely on new facts brought forth at trial as a basis for finding that LSU, through its agent Ms. Ater, borrowed the Schroeder car. This reliance is misplaced. The trial court specifically found that no new relevant facts were recounted that would change the result of the analysis conducted by the supreme court. We agree.
Statements by Ms. Ater that: (1) she would not have objected to Bradley’s use of the Schroeder vehicle, if she had known, and (2) she would not have objected if Eric had offered to get the ice, do not equate to actions by Ms. Ater or evidence control over Eric or the vehicle. She simply did not obtain control or dominion over Eric and the vehicle or acquire the right to direct the use of the vehicle by giving Bradley money and directions to the ice house that fateful day. Those actions did not constitute a borrowing.
A statement by Mr. Rolf Schroeder at trial that he gave his son unlimited permission to use the family car answered the question raised by Justice Cole in his concurrence, but did not |9answer the question of whether LSU borrowed the car. Mr. Sehroeder’s act of giving his son unlimited permission to use the car cannot be transformed into an act of borrowing on behalf of LSU or a completed loan of the car.
Appellants also argue that Ms. Ater knew that some form of transportation must be used to transport the ice. Because of that knowledge, the argument is advanced that Ms. Ater sanctioned the use of the ear for her purposes, or borrowed the car, and was responsible for Eric’s actions. We disagree. An assumption that some form of transportation would be needed did not equate to sufficient control over the boys’ activities, or the details of the trip, to serve as a reasonable basis for a finding that LSU was liable under the automobile, umbrella, or general liability policies.
“Under the facts established in this case ..., it logically follows that a reasonable person, a person in the street or an average citizen, would not say that LSU had ‘borrowed’ the Schroeder vehicle.” Schroeder v. Board of Supervisors, 591 So.2d at 346.
For these reasons, we affirm the judgment of the trial court. The costs of the appeal are assessed to appellants.
AFFIRMED.
LeBLANC, J., concurs in result only.
PITCHER, J., concurs in results.