745 So.2d 816 (1999)
Sheila R. HUGHES, Plaintiff-Appellee,
v.
BOSSIER PARISH SCHOOL BOARD, Defendant-Appellant.
No. 32,225-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1999.
*817 Roland V. McKneely, Jr., Bossier City, Counsel for Defendant-Appellant.
David L. White, Bossier City, Counsel for Plaintiff-Appellee.
Vicki C. Warner, Shreveport, Counsel for Intervenor-Appellee.
Before NORRIS, C.J., and GASKINS, CARAWAY, PEATROSS and KOSTELKA, JJ.
NORRIS, Chief Judge.
In this personal injury action, the Bossier Parish School Board appeals a judgment finding it 100% at fault and awarding general damages of $50,000 to Sheila R. Hughes, whose left thumb was partially amputated in a school-related activity. For the reasons expressed, we affirm.

Factual background
Ms. Hughes was a student at Bossier Parish Community College ("BPCC") and had volunteered in the drama department for several semesters. On January 17, 1994 she attended a "work call" to construct the set and props for the drama club's upcoming play, "Princess and the Pea." The director, Stephen Slaughter, assigned Ms. Hughes and another volunteer, Karen McFadden, to insert pre-made eight-foot wooden columns into wooden bases. Each base consisted of four pieces, two of which would be screwed together with wood screws, then the column slid into the slot, then the final portions of the base screwed into place. All witnesses agreed that at least one person needed to hold the column steady while another, using a power screwdriver, secured it in the base.
Ms. Hughes and Ms. McFadden gave differing accounts of the accident. Ms. Hughes testified that she was squatting at the base, using a Makita power screwdriver to secure the column, while Ms. McFadden was standing, holding the column steady. Suddenly, she heard Ms. McFadden say, "Watch out, Sheila!" She looked up and saw the column almost down on her head. Instinctively she raised her hands, but the column struck her left hand, ripping off her thumbnail and nearly detaching the tip of her thumb. She further testified that right after the incident, Ms. McFadden apologized, saying she had "turned away for a minute."
According to Ms. McFadden, Ms. Hughes was holding up the column and handing wood screws to Ms. McFadden, who was at floor level and using the power tool. Somehow, the column began to rock; though she was on the ground, Ms. McFadden noticed this, got out of the way, and yelled to Ms. Hughes several times, "Sheila, clear!" Ms. Hughes, however, did not move as fast as expected, did not get up, and actually placed her hands under the column just as it hit the floor. Ms. McFadden admitted that she apologized to Ms. Hughes, but only because it was an unfortunate accident; she denied saying she looked away.
The director, Stephen Slaughter, testified that before each work call he reminded everyone of basic safety precautions, including the use of the warnings "clear" *818 and "heads up." He explained that "clear" means something was falling, so people nearby were to get out of the way. He did not actually see the accident or hear Ms. McFadden call out, "clear," but he seemed to recall that Ms. McFadden was using the power screwdriver.
The District Court ruled from the bench that although the director may have given "the world's greatest safety lecture," BPCC was totally responsible for bringing volunteers and students into a situation where an accident like this could occur. The court further ruled that Ms. Hughes was in an "emergency situation" and reacted naturally; thus there was no comparative fault. The court awarded the stipulated special damages[1] and took general damages under advisement. In a brief written ruling, the court fixed general damages at $50,000.

Discussion: Allocation of fault
By its first assignment of error the School Board contends the District Court erred in finding a sudden emergency and utilizing it as a defense to the plaintiffs primary or contributory negligence without considering and addressing the prerequisites and exceptions to the application of the doctrine. The School Board concedes the existence of the "sudden emergency" doctrine: a plaintiff who suddenly finds herself in a position of imminent danger, without sufficient time to consider and weigh all circumstances or the best means of avoiding danger, is not guilty of negligence if she fails to take action which may later appear to have been a better means of avoiding peril. See, e.g., Hickman v. Southern Pacific Transp. Co., 262 La. 102, 262 So.2d 385 (1972). The Board contends, however, that the doctrine applies only when the emergency is not of the plaintiffs own act or omission. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956). The Board argues that by Ms. McFadden's account of the incident, Ms. Hughes negligently allowed the column to wobble and fall, and failed to heed several "clear" calls; thus she is not entitled to the presumption of sudden emergency. The Board concludes that the erroneous application of sudden emergency warrants a de novo review of the record. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
The law is very well settled that the allocation of fault is a factual determination and subject to the trial court's great discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2 Cir.1984). Factual findings are not disturbed on appeal absent manifest error. Sims v. State Farm Auto. Ins. Co., 98-1613 (La.3/2/99), 731 So.2d 197; Stobart v. State, 617 So.2d 880 (La.1993). When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Sims v. State Farm, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The District Court was faced with a classic case of conflicting testimony. The court commented that Ms. McFadden, who testified on the Board's behalf, was "very much trying to help BPCC all she can on this deal. I just want the truth out of you." The court obviously found Ms. McFadden's credibility lacking, and rejected her contention that the plaintiff caused the emergency. On the record presented, this is not plainly wrong. Ms. McFadden said the column "smushed her hand between the ground and the column," a description inconsistent with the medical evidence of a ripped nail and nearly detached fingertip. Under the circumstances, the court was entitled to reject Ms. McFadden's account of the accident and find that Ms. Hughes neither caused the emergency nor reacted to it unreasonably. We perceive no manifest error.
*819 The Board also argues, without elaboration, that Mr. Slaughter discharged the Board's duty of reasonable care by providing safety instructions and cautioning everyone on the set to use common sense. We do not find, on this record, that the court was plainly wrong to conclude that the supervision of the volunteers was inadequate. At any rate, Mr. Slaughter's control over Ms. McFadden's actions were sufficient to hold the board liable as an employer for its employee's actions. See, Schroeder v. Board of Supervisors, 94-0909 (La.App. 1 Cir.3/3/95), 653 So.2d 612, writs denied 95-1504, 95-1509 (La.9/22/95), 660 So.2d 480; Morrison v. Kappa Alpha PSI Fraternity, 31,805 (La.App. 2 Cir. 5/7/99), 738 So.2d 1105.

General damages
By its second assignment of error the Board urges the District Court erred in awarding general damages that are abusively high and manifestly erroneous. The Board concedes the court's "much discretion" in questions of quantum. La. C.C. art.1999; Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Recounting her injuries and recovery, the Board submits that $8,000 is the highest affirmable amount. See, Lartigue v. McElveen, 619 So.2d 207 (La.App. 3 Cir. 1993); Brown v. Sears, Roebuck & Co., 514 So.2d 439 (La.1987); Johnson v. Phillips, 544 So.2d 600 (La.App. 1 Cir.1989).
The appellate court may not simply review the medical evidence and conclude the award is excessive without taking into consideration the particular effect of the particular injuries on the particular plaintiff. Hae Woo Youn v. Maritime Overseas, supra; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a finding that the damages are an abuse of discretion may the appellate court turn to prior awards to gauge the highest or lowest possible quantum for the plaintiff. Id.; Merritt v. Karcioglu, 96-0431 (La.2/25/97), 687 So.2d 1002.
Dr. Clinton McAlister, an orthopedic surgeon, operated on Ms. Hughes on the date of the accident to reattach the tip of her thumb and the nail. He operated again in January 1995 to remove bone fragments and scar tissue from the thumb. He treated her intermittently for roughly two years and ultimately assigned a 28% disability of the thumb. Ms. Hughes described the pain of the accident as so severe that she nearly passed out. Even after the first operation she took pain medicine daily for a year; this diminished but did not completely relieve the pain. She further testified that the accident caused her to miss the first three weeks of school, as well as to lose a part-time job she had secured. For several months, she feared she might actually lose the thumb. The second surgery prompted another bout of severe pain. Her husband testified that even at the time of trial, over four years after the accident, she still complained of pain every week or two.
Significantly, Ms. Hughes described a diminished ability to perform everyday tasks. Her left hand grip is weak, and normal exertion can result in pain like splinters under her nail. She has had difficulty playing softball, for although she is right-handed, putting the glove on her left hand is painful. She testified that she had played the violin for 15 years, but since the accident she is unable to grip the neck properly and play a good vibrato.
As noted, the District Court implicitly found Ms. Hughes a credible witness. Her graphic description of the injury, lingering pain and permanent disability is persuasive, even on the impassive record. We concede that the award is at the upper end when contrasted with those for somewhat similar injuries. See, e.g., Lescale v. Louisiana Coca-Cola Bottling Co., 422 So.2d 241 (La.App. 4 Cir.1982); Robinett v. Silvereagle Transport Inc., 93-2491 (La.App. 4 Cir. 6/15/94), 639 So.2d 318, writ denied 94-1889 (La.8/12/94), 640 So.2d 1364. However, a hand injury that impairs an artistic pursuit may warrant a *820 somewhat higher damage award. See, e.g., Riser v. Acadiana Limousine Serv. Inc., 96-1687 (La.App. 3 Cir. 4/30/97), 693 So.2d 330, writ denied 97-1420 (La.9/19/97), 701 So.2d 173; Weber v. Buccola-McKenzie, 541 So.2d 315 (La.App. 5 Cir.1989); Quinn v. State, 464 So.2d 357 (La.App. 3 Cir.), writs denied 467 So.2d 1134, 1136 (1985). Because the District Court obviously balanced Ms. Hughes's injury against her artistic, educational and recreational objectives, we cannot declare the award abusively high.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs of appeal are assessed to the Bossier Parish School Board in the amount of $116.00. La. R.S. 13:5112.
AFFIRMED.
GASKINS, J., concurring in part and dissenting in part with reasons.
PEATROSS, J., concurring in part and dissenting in part for the reasons set forth in the concurrence and dissent of Judge GASKINS.
GASKINS, J., concurring in part and dissenting in part.
I respectfully concur with the majority's opinion that the school board was 100% at fault, but dissent on the amount of damages, finding that $35,000 would be the maximum a court could reasonably award for the damages to plaintiffs thumb that resulted in a 28% disability of her thumb.
NOTES
[1] The Texas Pipe Trades Health Benefit Fund, Ms. Hughes's husband's insurer, intervened to recover $4,650.89 in medical expenses paid on Ms. Hughes's behalf.