909 So.2d 1033 (2005)
Lindsay Ann CHARRIER, Individually and on Behalf of her Minor Child, Courtney Marsala, Plaintiff-Appellee
v.
Charles Edward PRIMM, Jr., Etha P. Dupree and U.S. Agencies Casualty Company, Defendant-Appellant.
No. 40,038-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 2005.
*1034 Mark J. Neal, Monroe, Counsel for Appellant.
Robert T. Knight, Metairie, Richard L. Fewell, Jr., for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
WILLIAMS, J.
In this action seeking damages arising from an automobile accident, the plaintiff, Lindsay Ann Charrier, filed suit on behalf of herself and her minor child, against the defendants, Charles Edward Primm, Jr., Etha P. Dupree and U.S. Agencies Casualty Insurance Company ("US Agencies"), seeking general and special damages. After Ms. Dupree was voluntarily dismissed from the lawsuit, and after a trial on the merits, the trial court rendered judgment in favor of Ms. Charrier. Subsequently, Mr. Primm and U.S. Agencies filed a joint motion for a suspensive appeal. Mr. Primm filed a separate motion for a devolutive appeal. For the reasons set forth below, we affirm the trial court's judgment.

FACTS
The evidence with regard to causation of the accident largely came from the testimony of four witnesses: Ms. Charrier, Timothy James Lee Holloway, Monica Lynn Brown and Corporal Jeffery Paul Pilcher. Stipulations established the authenticity of the medical records and bills, Ms. Charrier's lost wages and property damage, and the existence of an insurance policy covering Mr. Primm. The evidence with regard to Ms. Charrier's general damages came through her testimony and through stipulations establishing that two other potential witnesses would have provided corroborating testimony with regard to Ms. Charrier's injuries.
Several of the basic facts of the incident are undisputed. On January 16, 2003, Ms. Charrier was driving her vehicle in Monroe, Louisiana. She made a right turn from Teakwood Drive onto Louisiana Highway 165, a four-lane road with two northbound and two southbound lanes. She was headed in a southerly direction and moved to the left-hand lane. At that time, Mr. Primm was driving south on Highway 165 and struck Ms. Charrier's vehicle from the rear.
*1035 Ms. Charrier testified that on the day of the accident, she was taking her daughter to the doctor and was not in a hurry. After stopping at the stop sign at the intersection of Teakwood Drive and Highway 165, she looked both ways and then pulled out into the right-hand lane; she then put on her turn signal and moved into the left-hand lane because she needed to get gas. She stated that when she moved into the left-hand lane, she looked into her rearview mirror and "that's all I saw was somebody coming at me and I got hit." According to Ms. Charrier, she had plenty of time to pull out into the intersection before her vehicle was struck from the rear and pushed into the median. On cross-examination, she indicated that she did not know that the left-hand lane is usually the faster of the two lanes.
The next witness to testify was Timothy James Lee Holloway, who was driving a wheelchair van in the course of his employment at the time of the accident. Shortly before the collision, his vehicle was stopped at a red light on Medical Park Drive at its intersection with Highway 165. Holloway testified that the traffic on Highway 165 was "going through pretty good," when he noticed a truck that "just kind of went by pretty fast." The light turned green shortly afterward, and Holloway turned left onto Highway 165, proceeding south in the same direction as Ms. Charrier and Mr. Primm. The vehicle that Holloway noticed was driven by Mr. Primm; Holloway estimated its speed at 60 to 65 miles an hour (in excess of the 50 m.p.h. speed limit). According to Holloway, Mr. Primm's vehicle, which was in the left lane, went into the right lane and then back into the left lane. When Mr. Primm's vehicle returned to the left lane, the accident occurred. When specifically asked how the accident happened, Holloway testified:
When [Mr. Primm] had came [sic], I was, like I said, I was sitting back a good little ways probably about a half a football field, football field, somewhere around in there. And I had saw [sic] him get over into the right lane and which  because there was a car there and he was trying to get around that car. And when he got over into the right lane, [Ms. Charrier] was getting over and I  she was right there at being completely over. She was  I'd have to say maybe her tires was [sic] on the center line .... [a]nd he came around and just boom, there she was.
Holloway was then asked the very similar question of how he perceived the accident to occur. He responded:
To me, like I said I never saw [Ms. Charrier] pull out onto 165. I just saw her get over into the left-hand lane. I'm not  if I'm not mistaken, she was going around maybe another car. And when [Mr. Primm] came around, this car that was in the left lane, he came around and maybe saw the same car and [he] was going to get over and he hit her. So, that's how I saw the wreck.
Holloway then confirmed that Mr. Primm was changing lanes when he struck Ms. Charrier and that Ms. Charrier was "pretty much completely over into the left-hand lane." When asked if Mr. Primm tried to brake before the accident, Holloway responded that he "couldn't really tell," but he did not think that Mr. Primm did so because "when he hit her, she hit her brakes and he hit his." When Holloway was asked if the accident occurred around the intersection of Teakwood Drive and Highway 165, he responded, "[a] little bit further up from it."
The next witness to testify was Monica Lynn Brown, who was Mr. Primm's fiancée at the time of the accident. At the time of trial, the two were married, and Ms. Brown testified that her husband was *1036 in prison. She testified that on the day of the accident, she was in her car immediately behind Mr. Primm's vehicle, and that immediately prior to the accident, she was not traveling more than 45 miles per hour. She stated that just prior to the accident, she had pulled up beside Mr. Primm at a red light, had rolled down the window and had asked if he wanted to stop at a McDonald's on Highway 165. Ms. Brown testified that the accident occurred at approximately 12:00 o'clock noon, and that she saw the impact between Mr. Primm's vehicle and Ms. Charrier's vehicle. The remainder of her testimony concerned where she and Mr. Primm had been that day, and where they were going.
The last witness to testify was Corporal Jeffery Paul Pilcher of the Monroe Police Department, who investigated the accident. Corporal Pilcher did not witness the accident, but when he arrived at the accident scene he observed the two vehicles that were in the roadway. According to Corporal Pilcher, there was evidence in the roadway, "splatter from the radiator and stuff," just south of the intersection of Teakwood Drive and Highway 165. Corporal Pilcher also testified that he observed skid marks from Mr. Primm's vehicle; the skid mark for the right front was 158 feet in length, and the skid mark for the left was 97.1 feet in length. When asked if that was an unreasonable amount of skid marks assuming someone traveling 55 or 60 miles an hour hit his brakes hard to avoid an impact, Corporal Pilcher indicated that he had no training yet with regard to vehicle dynamics. He had prepared a diagram of the accident that was entered into evidence. The diagram indicated that the officer concluded the point of impact occurred near the intersection, based on the debris that he saw in the roadway. Although he did not measure how far south of the intersection the debris was found, he was asked if his report suggested that the distance was approximately 10 to 20 feet. The officer responded that "it would be hard to guess on that." However, on cross-examination, Corporal Pilcher acknowledged that the diagram indicated that the accident occurred within the left-hand lane in which Ms. Charrier was traveling, rather than on the dividing line. He admitted that he did not interview Mr. Holloway. Corporal Pilcher also admitted that the manner in which the vehicles were placed on the diagram was not based on the debris pattern present, but was based primarily on what the witnesses had told him following the accident.
The trial court rendered judgment in favor of Ms. Charrier, awarding general damages, lost wages, property damages and medical expenses. The court did not assign any fault to Ms. Charrier, and in ruling in her favor, found that the "rear end presumption," the adverse presumption "relative to the absence of Mr. Primm" and the testimony of the "eyewitness," Mr. Holloway, all favored the plaintiff. The court concluded that while Corporal Pilcher's testimony favored the defendant, as did this court's opinion in Hill v. Hutto, 33,583 (La.App. 2d Cir.6/21/00), 764 So.2d 1169, writ denied, 2000-2192 (La.10/13/00), 771 So.2d 651, the testimony and jurisprudence were not enough to overcome the presumptions and testimony in favor of the plaintiff. Mr. Primm and U.S. Agencies appeal the judgment.

DISCUSSION
The defendants contend the trial court committed manifest error in finding that Mr. Primm's actions were the legal cause of the accident. While they argue that the trial court failed to consider the physical evidence present at the accident scene, and erred in applying the "adverse *1037 presumption" as well as the "rear end presumption," we conclude for the reasons set forth below, that the trial court's judgment was not manifestly erroneous.
Absent an abuse of discretion or manifest error, a reviewing court cannot disturb the factual findings of a trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable; where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra. Allocation of fault is a factual determination subject to the trial court's great discretion. Hughes v. Bossier Parish School Board, 32,225 (La.App. 2d Cir.10/29/99), 745 So.2d 816.
At trial, the only two witnesses to testify with regard to Mr. Primm's operation of his vehicle were Ms. Brown and Mr. Holloway. The testimony of these two witnesses directly conflicted, and the trial court obviously credited the testimony of Mr. Holloway, a disinterested witness, above that of Ms. Brown. Accordingly, the trial court's decision must be given great deference, and we find that a reasonable factual basis exists for the trial court's acceptance of the pertinent portions of Mr. Holloway's testimony with regard to the manner in which the accident occurred. As previously noted, according to Mr. Holloway, Mr. Primm was traveling in excess of the speed limit and was changing from lane-to-lane as he proceeded south on Highway 165; Mr. Primm "looked like he was trying to get somewhere in a hurry," and was "weaving in and out of traffic." Mr. Holloway testified that Mr. Primm changed from the left-hand lane to the right-hand lane and then back to the left-hand lane immediately before striking Ms. Charrier's vehicle, which Mr. Holloway described as being "pretty much completely over into the left-hand lane."
Under the provisions of LSA-R.S. 32:79, whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rule, among others, has application:
A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
Furthermore, under the provisions of LSA-R.S. 32:104, a change of lanes by a driver must be indicated by a turn signal and made with reasonable safety. Thus, as we noted in Robert v. Nelson, 36,541 (La.App. 2d Cir.12/11/02), 833 So.2d 1136, the applicable rule from these statutes is that a motorist who attempts to change traffic lanes on a multiple-lane highway must ascertain, before turning, that the maneuver can be made safely. Moreover, as we noted in Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993), writ denied, 619 So.2d 547 (La.1993), when there is a change of lanes by a motorist immediately preceding an accident, the burden of proof is on the motorist changing lanes to show that he first ascertained that his movement could be made safely.
In the case at bar, accepting the eyewitness testimony of Mr. Holloway, Mr. Primm had the burden of proving that he first ascertained that his lane-changing movement could be made safely. Ms. Charrier gave testimony that supported a finding that she satisfied her burden. However, Mr. Primm, who was incarcerated, *1038 did not testify at trial,[1] and the eyewitness testimony accepted by the trial court indicated that Mr. Primm, who was speeding and weaving from lane-to-lane, did not ascertain that his lane-changing movement could be safely made. Instead, the fact that he collided with the rear of Ms. Charrier's vehicle weighs to the contrary, and we detect no manifest error in the trial court's conclusion that Mr. Primm's negligence was the cause of the accident. For this same reason, we distinguish the instant case from Hill v. Hutto, supra, where a motorist was at fault for turning onto a superior highway too closely in front of another motorist, thus causing an accident.
In so holding, we recognize that the diagram of the accident made by Corporal Pilcher indicates that the point of impact was very near the intersection of Teakwood Drive and Highway 165, indicating that Ms. Charrier was still in the process of turning onto Highway 165 at the time of the accident, and suggesting that she could have been partially at fault in causing the accident. However, Corporal Pilcher did not testify as an accident reconstruction expert, he did not witness the accident and he agreed that the evidence he found at the scene indicated that the accident occurred entirely in the left-hand lane of Highway 165. Furthermore, we must again give proper deference to the trial court who heard not only Corporal Pilcher's testimony, but also the testimony of Mr. Holloway and Ms. Charrier, the latter two's testimony supporting the trial court's conclusion. The assignments of error lack merit.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed at the appellants' costs.
AFFIRMED.
NOTES
[1] We note that the record does not establish that any effort was made, by either party, to attempt to perpetuate Mr. Primm's testimony prior to trial. The plaintiff is not required to establish any portion of her case through the defendant's testimony. However, when a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and particularly within his own knowledge, and fails to present his own testimony, the adverse presumption is raised, and will be given effect, so that the facts, as the defendant would have them, do not exist. Driscoll v. Stucker, XXXX-XXXX (La. 1/19/05), 893 So.2d 32; Farrell v. Pierre, 02-1136 (La.App. 5th Cir.4/8/03), 846 So.2d 49. Consequently, although Mr. Primm was incarcerated, he was responsible for producing his own testimony, and he failed to do so; thus, we conclude that the trial court did not err in applying the adverse presumption against Mr. Primm.