968 So.2d 315 (2007)
Kurt COATES, Plaintiff-Appellant
v.
HILL WHOLESALE DISTRIBUTING COMPANY, Defendant-Appellee.
No. 42,584-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
Rehearing Denied November 29, 2007.
*316 Gauthier, Houghtaling, & Williams, by James M. Williams, Brian J. Houghtaling, Metairie, for Appellant.
McMichael, Medlin, D'Anna & Wedgeworth, L.L.C., by James C. McMichael, Jr., Shreveport, for Appellee.
Before STEWART, DREW and MOORE, JJ.
STEWART, J.
Plaintiff, Kurt Coates, appeals the judgment of the trial court in favor of the defendant, Hill Wholesale Distributing Co. ("HWD"), rejecting plaintiff's demand for damages for the defendant's alleged breach of an employment contract. For the reasons more fully explained herein, we reverse the judgment of the trial court and render judgment in favor of Kurt Coates and against HWD in the amount of $44,123.02.

FACTS
Kurt Coates was hired in May of 2003 by Hill Wholesale Distributing Co. ("HWD"), a countertop and flooring wholesaler based in Shreveport, Louisiana. Coates was hired to work as a floor covering sales representative out of the company's Baton Rouge office at an annual salary of $50,000. Although Coates' salary was guaranteed for one year, he was terminated by HWD on October 31, 2003, less than six months after he began. Coates filed suit against HWD for breach of the employment contract seeking payment of the unpaid portion of his guaranteed one-year salary and penalties and attorneys' fees under La. R.S. 23:631. HWD answered *317 the petition asserting that Coates was fired for good cause, thus relieving it from the salary obligation in the employment contract.
Trial was held on October 31, 2006, during which the court heard testimony from the plaintiff and from HWD's president, Allan Hill. The parties by stipulation also submitted various exhibits into evidence including, but not limited to, the depositions of two HWD employees, Coates' personnel file, his call/sales reports and the documents reflecting his engagement and termination.

EVIDENCE ADDUCED AT TRIAL
The terms of Coates' employment were set forth in a letter from Coates to Allan Hill dated May 13, 2003, and a reply e-mail from Hill to Coates on May 16, 2003. The letter from Coates set forth the following conditions of employment:
1.) an annual salary of $50,000 guaranteed for at least one year;
2.) a company vehicle, together with necessary maintenance expenses and a Fuelman gas card;
3.) a cell phone;
4.) expense reimbursement (meals, hotel, etc.);
5.) health insurance coverage with a limited monthly employee contribution of $200.00;
6.) cost of Cobra coverage to cover lag time between health insurance provided by old employment and new health insurance;
7.) bonus commission based on percentage of profit;
8.) description of territory to be covered;
9.) one week of paid vacation after six months and two weeks after the first year of employment;
10.) HWD would provide a list of job duties, customer lists, and types of customers to be called on; and,
11.) HWD would provide a list of products and any sales quota Coates was expected to meet.
The letter included Coates' request for a one-year guarantee on the salary by explaining that as a new venture for HWD, it could take more than a year to get the project off the ground.
Allan Hill's May 16 reply indicates that the parties were in agreement on everything except the following:
1.) bonuses were to be paid only if the money was available and if HWD was operating at a profit;
2.) joining trade groups at company expense could only be done with prior company approval, and;
3.) two weeks' paid vacation would be granted after the first year of employment, prior to which Coates could use sick leave.
At trial, Allan Hill testified that he had hired Coates in an effort to open up a new product line in south Louisiana and that the two documents referenced above reflected the employment agreement between Coates and HWD. Although Hill admitted that Coates was never provided a sales quota or a list of customers that he was to call on, he described Coates' sales performance during his time at HWD as poor. Mr. Hill identified a document which was provided to and signed by Coates on October 20, 2006, setting forth Coates' duties regarding his employment. The document provided in pertinent part:
 Call reports from previous week & Itinerary for CURRENT week to be faxed to Shreveport office by 9:00 a.m. on Mondays (XXX-XXX-XXXX)
 If need be, appointments can be scheduled during the previous week via cell *318 phone while travelling (sic) & office time so that Mondays can be productive with actual sales calls.
 Go through the local phone books to get your appointments lined out. Also use the AIA listing Roy from Azrock faxed us.
 8 to 12 physical sales calls per day required (except on office day)
Mr. Hill testified that he had directed Coates' immediate supervisor, Susan Hill, to draft the document and provide it to Coates. Hill further admitted that the October 20, document was the first time Coates had been informed in writing about the need to file call reports and itineraries. However, Hill alleged that Coates had previously been informed verbally on many occasions.
Mr. Hill also identified a "Separation Notice" completed by him indicating that on October 31, 2003, he had orally informed Coates that he was terminated for failure to turn in call reports and itineraries for two weeks. However, when confronted with documentary evidence to the contrary, Mr. Hill conceded that Coates had faxed a report to the office on October 20, 2003, reflecting his activities of the previous week.
Susan Hill, a sales manager with HWD, testified in her deposition that Coates was hired to be a sales representative responsible for calling on floor covering dealers and architects to try and provide sales of the products marketed by HWD. Coates answered to both her and Allan Hill. She testified that Coates was very lethargic, that his sales performance was disappointing, and that he failed to turn in his call reports as required. She testified that she spoke to him on several occasions beginning about three months into Coates' employment and finally drafted the above-referenced October 20, 2003, document listing Coates' duties for him to acknowledge through his signature.
Ms. Hill testified that while she had never documented any of the warnings she had communicated to Coates about his failure to comply with the call report requirements, but that he had been warned on several occasions prior to being provided the written form delineating his obligations. She also testified that on one occasion she had observed Coates drive his company vehicle after drinking alcohol at a work function. However, she did not recall addressing the matter with Coates as a violation of company policy. As far as she was concerned, the only reason for Coates' termination was his failure to turn in call reports as required of him.
Wanda Wallace, another HWD employee, was also deposed. She testified that she was the manager of the Baton Rouge office during Coates' employment but that her duties did not include supervising Coates or any other sales representative. However, as manager she was aware that Susan Hill and Allan Hill were less than satisfied with Coates' performance and his failure to turn in timely call reports and itineraries. She testified that she had seen faxes come in to Mr. Coates warning him about the necessity of filing his call reports and itineraries and that Susan Hill had met with Coates' personally to discuss the issue. She stated that all employees were told that if they did not file their call reports, they could be terminated.
In his trial testimony, Coates stated that he took the job because he thought it presented an opportunity for advancement, but he insisted on one year's guaranteed salary because he felt that as a start up venture it could take some time to become profitable. He testified that despite his requests, he was never provided the sales quotas or account lists referred to in the contract between the parties. He *319 would not say that he believed his performance to be poor, but instead claimed that any lack of success was due to HWD's failure to abide by its obligations under the employment contract. Contrary to the testimony of Allan and Susan Hill, he also testified that he filed his call reports about once a week and denied that he had ever drunk alcohol in a company vehicle. He further stated that did not drink alcohol because he was on various medications which prevented him from doing so.
At the close of the evidence, the trial court found that the plaintiff had been terminated for cause and, therefore, was not entitled to the relief prayed for. A judgment to that effect was signed on November 21, 2006. The instant appeal followed.

DISCUSSION
Wrongful Termination
La. C.C. art. 2749 states:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
An employer's discharge of an employee hired under a fixed term contract without cause results in the employee's entitlement to compensation for all wages or salary that he would have received but for the breach. Andrepont v. Lake Charles Harbor and Terminal Dist., 602 So.2d 704 (La.1992); Carlson v. Ewing, 219 La. 961, 54 So.2d 414 (1951). There is no dispute in the present case that Coates was hired for a fixed term of one year and that he was discharged well before that fixed term expired.
The determination of cause or "serious ground for complaint" is a subject to manifest error review on appeal. Absent an abuse of discretion or manifest error, a reviewing court cannot disturb the factual findings of a trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra; Charrier v. Primm, 40,038 (La.App. 2d Cir.08/19/05), 909 So.2d 1033.
The trial court concluded that HWD had good cause for terminating Coates. The evidence adduced from Allan Hill, Susan Hill, and Wanda Wallace indicated that HWD was considerably disappointed with Coates' sales performance. However, it is also clear that HWD did not provide adequate support to Coates in light of his poor sales. The record indicates that Coates was never provided a sales quota or a list of call leads to make. Moreover, there was never a written description of his job responsibilities until October 20, 2003, eleven days before he was terminated.
Even if we were to assume Coates had been sluggish in his compliance with the company's policy requiring sales representatives to submit their weekly itineraries and call reports to management, eleven days is hardly a fair time frame for HWD to adequately evaluate complicity with their mandate or his ability to turn around poor sales. Nonetheless, we do not suggest that Coates was a model employee, but that it appears that the primary consideration in terminating his guaranteed contract was in fact his poor sales. By signing a contract with a guaranteed salary for a year both parties had to contemplate the possibility that sales may fail to meet projections in the short term. As such, poor sales alone cannot serve as the *320 basis for termination of this employment contract.
It appears that HWD was grasping for issues to complain about concerning Coates' performance as a pretense for terminating his employment. For instance, Mr. Hill indicated that while the separation notice did not mention violation of the company alcohol policy as a reason for termination, he had received a report that Coates had been observed drinking beer while in a company vehicle. Moreover, Mr. Hill admitted that he had no knowledge of, and Coates' personnel file does not reflect, whether an Employee Warning Notice had ever been completed in regard to any discipline of Coates as was required by HWD's employee manual. So, while it appears that HWD's major complaint was Coates' purported failure to compliance with its documentation requirements for sales, it chose not to comply with its own documentary rules with respect to his employment with them.
Viewed in light of Coates' alleged poor sales performance, and HWD's lack of support and compliance with its own documentary requirements, we find their termination of Coates for his purported failure to file reports was pretense for termination because of poor sales. Coates' failure to consistently file reports may have deprived his employer of the ability to determine whether the lack of sales was due to lack of effort or the difficulty which is implicit with any new business venture. However, HWD's termination of his employment contract after only eleven days' written notice of reporting requirements and before even half of the contract term had expired does not comport with fair dealing and is contrary to the law.
Moreover, HWD's actions following its termination of Coates further underscore our conclusion that his firing was pretextual. Most significantly, Coates' employment file shows that a week after his termination, on November 7, 2003, HWD made a request for a "preemployment" background check on Coates. It seems strange that an employer would perform a "preemployment" check on an employee it had fired a week earlier unless it was looking for information that would buttress an adverse employment decision made toward that employee. Despite HWD's claims to the contrary, we find no support for their contention that they fired Coates for cause. As such, we find that the trial court's decision was an abuse of discretion and we reverse and order HWD to pay Coates the balance of the monies owed under his contract.
La. R.S. 23:631 et seq
La. R.S. 23:631 governs the payment of wages after the discharge of an employee. It reads in pertinent part:
(1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
Coates and HWD entered into an employment contract for a term of one year for $50,000. Under La. R.S. 23:631, Coates should have received compensation on or before November 15, 2003. Thus, he should have been paid $29,166.67 representing the remainder due under the contract.
Under the employment contract Coates was required to contribute $200.00 a month to his employer to cover his health insurance costs. Following his termination, Coates has paid $908.05 per *321 month to HWD to continue his health coverage. Mr. Coates alleges in brief that the amount he would pay will increase to $1,035.00 per month "upon information and belief;" however, we find no support for this increase in the record. Since Coates was employed five months, we will calculate the damages over the seven months remaining on his contract with HWD using the difference in the $200.00 a month he was to pay under the contract and the $908.35 a month he actually paid in health care insurance costs for the term of the contract. Thus, we award $4,956.35 in health insurance costs as a result of the breach of his employment contract.
La.R.S. 23:632 provides for reasonable attorneys fees in the prosecution of a suit for wrongful termination. Mr. Coates asked for $15,347.49 representing one third of the amounts he alleged he was to recover under this breach of contract. However, we find that an award of $10,000 is appropriate under the facts of this case.

CONCLUSION
For the reasons set forth above, the judgment of the trial court in favor of Hill Wholesale Distributing Co., is hereby reversed and we render judgment in favor of Kurt Coates and against HWD in the amount of $44,123.02. Costs of this appeal are assessed to HWD.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.